No. 20,297.

J. D. STERLING *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(376 P. [2d] 676)

Decided December 3, 1962.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN E. BUSH, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

STERLING and McCray were jointly charged by direct information with robbery and conspiracy to commit that offense, the robbery count charging that they made an assault on one Irvine and "did rob, seize, steal, take and carry away a watch and moneys" from his person. Upon trial both were convicted of robbery, the trial court at the conclusion of the People's case dismissing the conspiracy charge. Sterling was thereafter sentenced to a term of from three to ten years in the state penitentiary, and by writ of error he seeks reversal of the judgment.

McCray prosecuted a separate writ of error, contending that the evidence was insufficient to support his conviction. The attorney general confessed error and accordingly the judgment as it pertained to McCray was reversed. See *McCray v. People,* 150 Colo. 178, 371 P. (2d) 422.

Sterling's principal assignments of error are: (1) the general insufficiency of evidence to support his conviction and (2) the refusal of the trial court to give his tendered instruction No. 1. From a careful review of the record we conclude that both assignments are without merit. However, in order to give meaning to this conclusion, it is deemed necessary to briefly outline the evidence adduced upon trial.

Irvine and a woman companion, named Gloria, entered a tavern in downtown Denver in the late afternoon on Easter Sunday, March 29, 1959. Each ordered a beer but the barmaid, for reasons not disclosed to us, refused to serve Gloria. A dispute flared between the barmaid and Gloria, in the course of which the barmaid hurled a full glass of beer in Gloria's general direction, following which Gloria and Irvine determined it to be wise to leave. Irvine declared that as he was leaving he was physically assaulted, without provocation, by Sterling, a total stranger. Concerning the ensuing events, he testified as follows: "Mr. Sterling grabbed me and peeled my wrist watch off — grabbed my right arm and doubled it behind my back. I put my hand on my billfold and he got me in

the middle of the building and said 'You better turn loose of that or I'll kill you.' " Moments later, according to Irvine, the billfold, containing $110 in currency, and indeed the pocket itself, were literally "cut out" of his pants by means of a knife or other sharp instrument. Irvine was uncertain as to just who got his wallet. He testified that he thought Sterling was using both of his hands to hold him down, and that he never saw McCray until after the assault and all parties were then on the sidewalk outside the establishment.

Two police officers happened onto the scene and saw Sterling either "running" or "walking fast" after McCray toward Sterling's 1956 Cadillac, which had been previously parked in a nearby parking lot. Sterling and McCray were placed under arrest and a cursory, preliminary search of Sterling disclosed that Irvine's wrist watch was secreted in Sterling's coat pocket. Sterling and McCray were next placed in the rear seat of the squad car and shortly thereafter were taken to headquarters. Concerning what happened as they neared the headquarters, one officer testified as follows: "When we got into the Police Building on the ramp, I saw Mr. Sterling moving around. He was in the middle of the car and I said 'sit still.' He had something in his hand. In the rear of the car, toward Mr. McCray, I saw the ripped pocket. The pocket which was ripped from Mr. Irvine's pants, with his billfold, lying [on the floor] at the feet of Mr. McCray."

Sterling's version of the fracas was that he initially tried to break up a dispute between Gloria and the barmaid and that his actions as a mediator impelled Irvine to assault him. He admitted a fight with Irvine, but denied "cutting out" the latter's pocket and billfold. He explained the fact that Irvine's wrist watch was later found in his pocket by asserting that he first saw the watch lying on the floor after the fight and that he mistakenly believed it to be his and accordingly slipped it in his pocket.

This brief recital of the evidence demonstrates the patent untenability of Sterling's contention that there is

insufficient evidence to support the verdict of the jury that he was guilty of robbery. Irvine's testimony made out a prima facie case of robbery. His testimony was corroborated by two highly incriminating circumstances: (1) his wrist watch was later located in Sterling's coat pocket; and (2) his pants pocket and billfold were later found on the floor in the back seat of the squad car in close proximity to Sterling. Sterling's denial of the robbery did no more than create a disputed issue of fact properly to be resolved by the jury. In our view there is ample evidence to support the determination that Sterling robbed Irvine.

■ As a corollary of his contention that the evidence is legally insufficient to support his conviction, Sterling additionally argues that the information alleges that he forcibly took Irvine's watch *and* moneys; that the most the evidence shows is that Sterling took Irvine's watch and there is no evidence that he took Irvine's "moneys." Hence, according to Sterling, the People did not establish *all* of the material allegations set forth in the information. Assuming without deciding that such is a correct evaluation of the evidence, Sterling's argument is to no avail. As was noted above, Irvine testified that Sterling assaulted him and forcibly stole his wrist watch. The fact, if it be a fact, that the People were unable to prove that Sterling also stole Irvine's money is under such circumstances immaterial. In *Rowan v. People,* 93 Colo. 473, 26 P. (2d) 1066 it was held that "in robbery the kind or value of the property taken is not material" and that the gravamen of the offense is the "manner of the taking."

Sterling tendered one instruction supposedly tailored to his "theory of the case," which instruction was refused by the trial court. It is contended that such refusal necessitates a second trial. The tendered instruction reads as follows:

"If you find from all the evidence that J. D. Sterling did not attack Joseph Irvine, *but was attempting to break up a fight which developed by restraining Joseph Irvine*

*from attacking Billie Rice,* and that during the struggle with Joseph Irvine, Joseph Irvine's pocket was cut out by persons unknown, and his wallet was taken by persons unknown and during the struggle between Joseph Irvine and J. D. Sterling, Joseph Irvine's watch fell off or became dislodged from his arm and was later picked up by J. D. Sterling on the floor of the bar, J. D. Sterling believing that the watch was his own, then you should find that J. D. Sterling is not guilty of the charge of robbery." (Emphasis supplied.)

While we have repeatedly held that a defendant in a criminal proceeding is entitled to an instruction based on his "theory of the case," this does not mean that just any instruction so labeled should be given by the trial court. Such an instruction must be in proper form and based on the evidence in the record, and should not merely reflect the wishful thinking of counsel. We disapprove of course of an instruction on a theory of the case which is totally unsupported by evidence, and also we equally condemn an instruction which emphasizes the evidence deemed helpful to a defendant, but conveniently overlooks undisputed evidence of an incriminating nature.

In support of those general observations see *Leopold v. People,* 105 Colo. 147, 95 P. (2d) 811, where it was declared: "As a purely procedural matter the tendered instruction was improper, since the trial court has no duty to, and should not, select the salient points in the evidence, favorable or unfavorable, and specifically call them to the attention of the jurors."

Also, in *Payne v. People,* 110 Colo. 236, 132 P. (2d) 441 it was said: "No matter how improbable or unreasonable the contention, the defendant was entitled to an appropriate instruction upon the hypothesis that it might be true . . . *It must be borne in mind that the 'contention' referred to must be one grounded on the evidence, neither a mere fanciful invention of counsel nor one involving an impossibility."* (Emphasis supplied.)

The tendered instruction suggests that the fracas be-

tween Irvine and Sterling had its origin when Sterling attempted to restrain Irvine "from attacking Billie Rice," the barmaid. There is no evidence to support this premise. On the contrary, even Sterling testified that he attempted to break up an argument between Gloria and the barmaid, and that it was under this circumstance that Irvine assaulted him. The tendered instruction is not "grounded on the evidence."

Nor is this the only defect perceived in the tendered instruction. It also suggests that the pocket and wallet were cut out of Irvine's pants by person or persons "unknown" to Sterling. Such contention is highly tenuous, if not downright impossible, when viewed in the light of the undisputed evidence that the pocket and billfold were subsequently located virtually at the feet of the defendant. Suffice it to say, the trial did not commit reversible error in refusing the instruction tendered by Sterling.

It is finally urged that the District Attorney was guilty of "prejudicial misconduct" in his cross-examination of both McCray and Sterling. The record does not justify the accusation.

The judgment is affirmed.