No. 20,250.

DONALD W. NELSON *v.* MARILYN GRISSOM, FORMERLY
MARILYN NELSON.
(332 P. [2d] 991)

Decided June 24, 1963.

Messrs. QUIAT & WOODFORD, for plaintiff in error.

Messrs. RICHESON & LAWLER, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

WHEN Marilyn Nelson was granted a divorce from Donald Nelson, the trial court awarded her the sole care, custody and control of their two minor daughters (ages 5 and 2), subject to Donald's right to reasonable visitation.

Two and one-half years later Marilyn moved the court for permission to remove the children to the State of California, and as grounds therefor stated that some time subsequent to the aforementioned divorce she married one James Grissom, a printer, who had recently found employment with the San Francisco Chronicle, and that she and her new husband desired to establish their family home in California. She alleged "that the children . . . have adapted themselves to the home life of . . . [Marilyn] and her new husband and appreciate their home and their new step-father."

This request to remove the children to California was vigorously resisted by Donald who, prior to the time that Marilyn filed her motion to remove the children, had obtained an *ex parte* restraining order enjoining her from taking the children from the State of Colorado.

Prior to hearing on Marilyn's motion to remove the children to California, Donald sought and obtained a so-called "discovery order" of court which authorized him to inspect certain hospital records pertaining to James Grissom and also to talk to a doctor who had examined Grissom.

The following day this order was vacated by the court, apparently on its own motion, on the grounds that "the inquiry of the doctor and inspection of the records of the . . . hospital is a privileged communication." Thereafter, Donald sought a rehearing of that matter, but the court declined to so do and thereafter repeatedly and consistently held that the hospital records and the doctor were not to be available to Donald.

Upon the hearing of Marilyn's motion to remove, Donald introduced much testimony tending to show the unfitness of James Grissom, though he did not challenge

Marilyn's fitness to have the care of the two children. It was established that Grissom about one and one-half years prior to the hearing had threatened his children by a prior marriage with a loaded rifle and on that occasion shot himself in a suicidal attempt. Apparently Grissom was first taken to Denver General Hospital, and then to Colorado Psychopathic Hospital, and at this later institution was examined by a psychiatrist, not for the purpose of treatment but for evaluation.

At the hearing Donald, by way of an offer of proof, again attempted to bring the hospital records pertaining to Grissom before the court, and also sought to be permitted to examine the psychiatrist. The trial court summarily refused to entertain this request, continuing to hold that such was privileged.

Upon conclusion of the hearing the trial court granted Marilyn's motion to remove the children to California and Donald now seeks reversal of this order.

 In our view the trial court erred in several of its rulings which effectively precluded Donald from making inquiry into certain of the hospital records which might well have revealed considerable as to the parental fitness of Grissom, and also denied Donald the opportunity to propound *any* questions to the psychiatrist who had examined Grissom.

The issue before the trial court was whether it was in the best interest of the minor children to permit their removal to California where they would live in a household presided over by James Grissom. Evidence as to his emotional stability, or lack of it, was certainly material to this issue, even though he was not a party to this litigation.

Grissom having already moved to California, the trial court concluded that it was unable to order him to submit to a mental examination. However, the custodian of the records at Colorado Psychiatric Hospital was well within the reach of a subpoena duces tecum, and the psychiatrist was apparently available to the end that he

too could have been subpoenaed to give evidence. The trial court erred in holding that the hospital records regarding Grissom, and the doctor who examined him, were outside the pale of the court.

By this opinion we do not necessarily conclude that these hospital records and the testimony of the psychiatrist are admissible in evidence. We do hold, however, that the trial court erred in denying Donald the opportunity to show that neither was privileged, and that each was otherwise competent. Statements made by one to a doctor are not *ipso facto* privileged, but are privileged only if they meet all of the several requirements contained in C.R.S. '53, 153-1-7(4).

Nothing we have said herein should be interpreted as an indication by this Court as to what should be the ultimate disposition of Marilyn's request to remove the minor children to California, but only that all relevant facts should be explored. The judgment is reversed because of errors of the trial court which completely stymied Donald in his effort to develop a legitimate line of inquiry, and the matter is remanded with directions to the trial court to permit both Marilyn and Donald to call, or recall, such witnesses, as they may be advised, such proceedings to be consonant with the views expressed herein.

MR. CHIEF JUSTICE FRANTZ and MR. JUSTICE HALL concur.