No. 21755.

ROBERT JOSEPH WERTZ *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(418 P.2d 169)

Decided July 18, 1966. Rehearing denied October 10, 1966.

MELLMAN, MELLMAN and THORN, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, GEORGE E. DEROOS, Assistant, for defendant in error.

*In Department.*

PER CURIAM.

AFTER trial to the jury, the defendant in the lower court, Robert Joseph Wertz, was convicted of the crimes of burglary, conspiracy to commit burglary, larceny and conspiracy to commit larceny. Writ of error ensued.

The first assignment of error relates to the failure of the trial court to give defendant's tendered instruction No. 1 "A," which instruction was tendered as a statement of the defendant's theory of the case and read as follows:

"You are hereby instructed that the defendant contends that he was at the home of Abe Neiman for the purpose of obtaining a job for several of his friends and that he must have opened the storm door in order to knock on the inner back door of the Neiman's home. This was done on the 17th day of December, 1963, and this accounts for the fingerprints being present at the home. Defendant denies that he has ever been in the Neiman's home on any occasion."

It is well settled that the defendant is entitled to an instruction on his theory of the case, provided the

instruction meets the following requirements: (a) that the instruction is in proper form, and (b) that there is evidence to support defendant's theory. In the recent case of *Sterling v. People,* 151 Colo. 127, 376 P.2d 676, it was observed:

"While we have repeatedly held that a defendant in a criminal proceeding is entitled to an instruction based on his 'theory of the case,' this does not mean that just any instruction so labeled should be given by the trial court. Such an instruction must be in proper form and based on the evidence in the record, and should not merely reflect the wishful thinking of counsel. We disapprove of course of an instruction on a theory of the case which is totally unsupported by evidence, and also we equally condemn an instruction which emphasizes the evidence deemed helpful to a defendant, but conveniently overlooks undisputed evidence of an incriminating nature.

"In support of those general observations see *Leopold v. People,* 105 Colo. 147, 95 P.2d 811, where it was declared: 'As a purely procedural matter the tendered instruction was improper, since the trial court has no duty to, and should not, select the salient points in the evidence, favorable or unfavorable, and specifically call them to the attention of the jurors.'"

■ Applying these rules to the present case, it is our finding that the tendered instruction is not in proper form. While the first sentence of this instruction indicates it is a statement of what the defendant contends, the second sentence might easily be construed to mean that the court is stating a fact for the jury. The third sentence is simply a denial by the defendant that he was in the home in question. Since the second sentence might easily be misinterpreted by the jury, we conclude the tendered instruction is not in proper form.

■ Also, there is doubt that the tendered instruction is consistent with all the defendant's evidence given in the case. The defendant admitted at trial that the

fingerprints found on the back door were his finger-prints and attempted to explain their presence by re-lating his reason for being at the Neiman home. De-fendant asserted that he was attempting to find employ-ment for some friends through Mr. Neiman, and that he went to the Neiman residence on the previous Tues-day, knocked on the door, but found no one at home. He emphasized the idea that he had never been inside of the Neiman residence at any time. Two young twin brothers, age nine, and determined by the court to be competent to testify, identified the defendant and stated that they had seen him coming out of the Neiman resi-dence, which was their grandmother's house. The de-fendant claimed that he obtained the address of the Neiman residence by looking up the name of Mr. Nei-man in the telephone directory. The evidence was un-controverted, however, that the telephone was listed under the name of Ruth Neiman.

 It seems to us that the tendered instruction singles out some, but not all, of the salient points in the evi-dence and specifically calls them to attention. The items mentioned in the instruction are helpful to the defend-ant but fail, in a comprehensive manner, to state the defendant's theory of the case. For these reasons, the instruction was properly refused.

The second assignment of error by the defendant re-lates to the rebuttal testimony permitted by the court from Officers Roberts and Burns. On direct examina-tion, Officer Roberts testified: "At this time, he (defend-ant) stated 'It could not be me' — he was nowhere near, in or around this house." Officer Burns was present when the alleged statement was made by the defendant.

In making the opening statement for the defendant, his attorney advised the jury that he believed defend-ant's evidence would disclose that the defendant was not at the Neiman home on the date in question and, fur-ther, that the evidence would show the defendant was never in the Neiman home, although he had been at

that address. The defendant then testified in his own defense; and in the course of his testimony, stated several times that he had never been inside of the Neiman home. In addition, the defendant denied having a conversation with the officers in which he told them he was "too smart to leave fingerprints."

Under these circumstances, the court permitted the officers to be recalled for rebuttal testimony. Officer Roberts testified as follows:

"Q. Did he make a statement regarding fingerprints?

"A. Yes sir. He stated he was 'too smart to leave a fingerprint at the scene.'"

Detective Burns gave the following testimony:

"Q. Will you tell us what the defendant told Officer Roberts at that time?

"A. It was in regards to a question directed by Detective Roberts in my presence, that we had fingerprints at the scene of this 1434 Vrain, Mr. Neiman's house, and also some witnesses; at which time Mr. Wertz stated that he had never been in this house or around in the area. And in regards to a fingerprint, that it couldn't have been his, he would have been too smart to leave a fingerprint."

■■ The admission of rebuttal testimony is largely discretionary with the trial court. In *Phenneger v. People*, 85 Colo. 442, 276 Pac. 983, the general rule concerning the admission of rebuttal testimony is stated (page 453 Colo.):

"From our examination of the authorities, we believe the rule to be that the admission of rebuttal testimony rests largely in the discretion of the trial court. This discretion is not subject to review unless the record shows that it was abused, thereby prejudicing the rights of the defendant and preventing him from having a fair and impartial trial."

Considering the emphasis which the defendant placed on the subject matter of the rebuttal testimony, it seems clear the trial court did not abuse its discretion in per-

mitting the brief rebuttal testimony of the two officers.

The judgment of the trial court, accordingly, is affirmed.

JUSTICES FRANTZ, PRINGLE and SCHAUER concurring.