The **PEOPLE** of the State of Colorado, Plaintiff-Appellee,

v.

**Wilfred Delano MARQUEZ,** Defendant-Appellant.

**No. 82SA307.**

Supreme Court of Colorado, En Banc.

Dec. 17, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Montano & Encinas, P.C., Alfred Duane Montano, Denver, for defendant-appellant.

ROVIRA, Justice:

Wilfred Delano Marquez, the defendant, appeals his conviction of two counts of aggravated robbery,[1] second-degree assault,[2] and crime of violence.[3] The jury also found the defendant was an habitual criminal.[4] We affirm.

### I.

The charges arose out of a robbery of the Palmer House Motel in Colorado Springs. The prosecution's evidence established that at approximately 2:30 a.m. on July 6, 1980, two armed men entered the lobby of the motel. One carried an automatic pistol, the other a 12-inch knife. Both men attempted to conceal their identities with bandanas and stocking caps.

The gunman, later identified as the defendant, forced James Lewis, the motel's security guard, who was also a sergeant with the El Paso County Sheriff's Office, to go to the front desk and subsequently into a rear office. Lewis was then forced to lie on the floor. With his pistol to Lewis' head, the gunman removed Lewis' wallet. The gunman then began an unsuccessful search of Lewis for weapons.

The other robber forced Myrtle Butler, the motel clerk, to go behind the front desk to the cash drawer, which contained approximately $35 and some traveler's checks, and then to the safe. When Butler could not open the safe, she was taken to the rear office and thrown on top of Lewis, thereby preventing the gunman from further searching Lewis. This enabled Lewis to conceal his gun, a .38 caliber revolver.

---

1. § 18–4–302, 8 C.R.S. (1978).

2. § 18–3–203, 8 C.R.S. (1978 & 1983 Supp.).

3. § 16–11–309, 8 C.R.S. (1978 & 1983 Supp.).

4. § 16–13–101(1), 8 C.R.S. (1983 Supp.).

The knife-wielding robber then raised his knife which Lewis interpreted as preparation for an attack. At that point, Lewis drew his revolver and fired. The knife-wielding robber collapsed on the floor. From the corridor outside the office, the gunman began firing into the office, using the wall as a shield. Two shots struck Butler—one in the left arm, the other in the left leg. Lewis returned fire, and one of his shots struck the gunman's arm. The gunman then stepped into the doorway and aimed a "death shot" at Lewis. However, Lewis fired first, hitting the gunman in the chest. The gunman immediately fled the scene.

A short time later, the defendant appeared at Saint Francis Hospital in Colorado Springs with gunshot wounds to his chest and arm. No bullet remained in his arm, but the bullet to the chest had lodged near his shoulder blade. Although defendant had signs of shock, he was conscious in the emergency room where a physician, Dr. Blum, removed the bullet with a simple procedure. Shortly thereafter, the two police officers who witnessed the removal obtained the bullet from the physician. Tests by firearm experts established that the bullet removed from the defendant's chest was fired from the revolver used by Lewis during the robbery.

At the conclusion of the prosecution's case, the defendant attempted to present an alibi defense. However, the trial court refused to submit the defendant's tendered alibi instruction to the jury on the basis that the defendant had not established such a defense. The defendant was then found guilty of the crimes referred to above, whereupon the trial court proceeded with the habitual criminal phase of trial.

Count five of the information alleged that the defendant had previously been convicted of the federal offense of bail jumping. The defendant claimed this conviction could not be used in the habitual criminal proceeding because his guilty plea was not tendered in accordance with Fed.R. Crim.P. 11. Defendant's objection was overruled, and the jury subsequently found him to be an habitual criminal.

## II.

The defendant first contends that the jury selection procedure used in El Paso County failed to meet the requirements of Rule 7(b)(2) of the Colorado Rules of Jury Selection and Service and that such failure should in and of itself be sufficient to require reversal. Rule 7(b)(2) states:

> No later than September 1, 1972, and of each year thereafter, each chief judge shall determine which supplemental lists are available in and applicable to each of the counties in his district. The chief judge shall direct the jury commissioner in each county in his district to acquire these lists no later than October 1, *except as otherwise provided in subsection (4) of this section (b)*, so that all master lists may be integrated prior to March 1 of the following year.[5] (emphasis supplied).

Subsection (b)(4) provides:

> For those counties participating in the centralized automated jury selection system under the supervision of the state court administrator, the deadlines and procedures for acquiring and transmitting supplemental lists shall be prescribed by the state court administrator.

In the proceeding which followed the defendant's motion challenging the jury array, he called an El Paso County jury commissioner as a witness. She testified that since the county began participating in the central automated jury selection system under the supervision of the state court administrator, it was her understanding that the chief judge had made no determination of supplemental list availability, nor had the jury commissioners acquired such lists. She also testified that the central automated system used the city directory

---

**5.** Master lists consist solely of voter registration lists in each county except in those counties which used city directories as the main source of the master jury lists prior to January 1, 1972.

C.R.J.S.S. 7(a). Supplemental or additional lists include city directories where available, and drivers' and chauffeurs' licenses. C.R.J.S.S. 7(b)(1).

and voter registration and driver licenses lists. On the basis of this testimony, the defendant's motion to quash the information pursuant to Crim.P. 24(c) was denied.

■ We find the trial court did not err in denying the motion because the record demonstrates that the defendant failed to establish that the requirements of Rule 7 had not been met. He made no showing that El Paso County's participation in the system did not comply with "the deadlines and procedures for acquiring and transmitting supplemental lists ... [as] prescribed by the state court administrator." There was also no evidence that El Paso County was denied access to, or that the state court administrator did not have access to supplemental lists.[6]

### III.

The defendant next contends that because the trial court erred in refusing to grant his challenge for cause to a potential juror, he was needlessly forced to exercise one of his peremptory challenges. Section 16–10–103(1)(j), 8 C.R.S. (1978), requires the trial court to sustain a challenge for cause where there exists "a state of mind in the juror evincing enmity or bias toward the defendant." Under defense counsel's skilled *voir dire*, the juror stated that she thought both sides of the case must be set forth before she could make a determination. Thus, it is suggested that such a disposition would have biased the defendant by nullifying the presumption of innocence.

■ The defendant discounts the *voir dire* conducted by the trial court which he claims "did not clarify or shed any light upon the juror's insistence that both sides of the case must be set forth." We disagree. Section 16–10–103(1)(j) also states

6. The maintenance of the master jury wheel through a centralized automated system is to be supervised by the state court administrator. C.R.J.S.S. 10.

7. Section 13–90–107(1)(d), 6 C.R.S. (1973 & 1983 Supp.) reads in pertinent part:
 (1) There are particular relations in which it is the policy of the law to encourage confi-

that no juror shall be disqualified "if the court is satisfied, from the examination of the juror or from other evidence, that he [the juror] will render an impartial verdict according to the law and the evidence submitted to the jury at trial." The court's *voir dire* of the potential juror, Mrs. Wilcox, disclosed no enmity or bias toward defendant. *See e.g., People v. Meyer,* 628 P.2d 103 (Colo.1981) (prospective juror patently demonstrated "a fixed prejudgment about the merits of the case and an unwillingness to accept and apply those principles that form the bedrock of a fair trial"); *Morgan v. People,* 624 P.2d 1331 (Colo. 1981) (juror doubted his ability and willingness to apply the law following explanations of the general principles of law regarding presumption of innocence and right to remain silent). Here, the most that can be said is that Wilcox manifested a misunderstanding of the role of the prosecution and the defense during a criminal trial. After its extensive *voir dire,* the trial court was satisfied the juror could render an impartial verdict. Moreover, Wilcox expressed a willingness to apply the proper principles of law. We find no "manifest abuse of discretion" by the trial judge in denying the challenge for cause which would warrant disturbing his decision on review. *See, e.g., People v. Abbott,* 690 P.2d 1263 (Colo.1984); *People v. Taggart,* 621 P.2d 1375 (Colo.1981); *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976).

### IV.

■ Defendant next argues that the admission into evidence of the bullet removed from his body and the testimony of attending medical personnel violated his statutory physician-patient privilege.[7] Be-

dence and preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:
 . . . .
 (d) A physician, surgeon, or registered nurse, duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information

cause the privilege is statutorily created, it must be strictly construed. *Community Hospital Association v. District Court,* 194 Colo. 98, 100, 570 P.2d 243, 244 (1977). The privilege covers "any information acquired in attending the patient, which was necessary to enable him [the physician] to prescribe or act for the patient." § 13–90–107(1)(d), 6 C.R.S. (1973 & 1983 Supp.). Information encompasses more than communications or statements made by the patient but includes observations resulting from examination. *Colorado Fuel & Iron Co. v. Cummings,* 8 Colo.App. 541, 46 P. 875 (1896) (privileged information includes that acquired by examination). Yet, the information acquired must be necessary for the physician to act or prescribe for the patient for it to be privileged. *Hanlon v. Woodhouse,* 113 Colo. 504, 160 P.2d 998 (1945) (blood alcohol test results not necessary for treatment were not privileged); *Cook v. People,* 60 Colo. 263, 153 P. 214 (1915) (patient's refusal to allow physician to remove bullet or to tell him how wound was received was information not necessary for treatment).

■ We have held that the statutory privilege is applicable in criminal cases. *People v. Reynolds,* 195 Colo. 386, 578 P.2d 647 (1978). Still, the burden of establishing the applicability of the privilege rests upon the claimant of that privilege. *Clark v. District Court,* 668 P.2d 3, 8 (Colo.1983); *Nelson v. Grissom,* 152 Colo. 502, 505, 382 P.2d 991, 993 (1963). The defendant has failed to establish the applicability of the privilege in this instance.

■ With respect to the admission of the bullet, the defendant argues that the bullet itself was "information" acquired by the attending physician which enabled the physician to prescribe or act and therefore

the bullet was privileged.[8] Even if the bullet could be considered "information" acquired by the physician, we believe that once it was removed it was a physical object that did not implicate any testimonial confidentiality between the patient and the physician.

It is also uncontradicted that two police officers witnessed the removal of the bullet in the emergency room while the defendant was conscious. In such case, no confidentiality existed. *See Green v. State,* 257 Ind. 244, 274 N.E.2d 267 (1971) (admission of bullet not violative of privilege when officer witnessed removal and testified to same); *Doss v. State,* 256 Ind. 174, 267 N.E.2d 385 (1971) (removed bullet not subject to privilege where sheriff observed removal and testified to same). Therefore, the officers' testimony which laid the foundation for the admission of the bullet into evidence was not prohibited by the privilege.

■ Defendant also argues that the testimony of the attending medical personnel violated his physician-patient privilege. Both Dr. Blum and the nurse who treated the defendant in the emergency area of St. Francis Hospital testified to the extent of the defendant's gunshot wounds, his treatment, and identification matters.

■ Those jurisdictions which have examined the propriety of such testimony have focused primarily on whether the information disclosed at trial was confidential. Among the factors bearing on confidentiality are whether third parties are present and whether the testimony concerns verbal communications or information obtained through observation or examination. Where the defendant-patient orally communicates to the physician information of a confidential nature, the privilege is likely to require exclusion of physician

acquired in attending the patient which was necessary to enable him to prescribe or act for the patient . . . .

**8.** Although the defendant suggests that the bullet may have been the product of an illegal search, he cites no authority for such a proposition. The trial court found, and the record

supports, that the bullet was obtained by the physician, the act of a private party, who was not acting as an agent of the police but out of medical necessity. *See People v. Benson,* 176 Colo. 421, 490 P.2d 1287 (1971); *People v. Henderson,* 38 Colo.App. 308, 559 P.2d 1108 (1976).

testimony concerning such communications. In *People v. Decina,* 2 N.Y.2d 133, 138 N.E.2d 799, 157 N.Y.S.2d 558 (1956) (prosecution for criminal negligence in operating automobile), the court held that the privilege required the exclusion of the physician's testimony concerning the defendant's medical history of epilepsy which the defendant had communicated to the physician while in police custody. *See also State v. Carter,* 383 So.2d 357 (La.1980) (doctor's testimony inadmissible where defendant suffering gunshot wound told doctor, out of hearing of police officers, that he had received his wounds from the woman he robbed). However, where a physician's testimony is limited to information obtained through observation and examination, the privilege is less likely to exclude testimony concerning the defendant's condition which is disclosed to or readily discernible to others present and is therefore not confidential. *See State v. Thomas,* 78 Ariz. 52, 275 P.2d 408 (1954), *aff'd,* 356 U.S. 390, 78 S.Ct. 885, 2 L.Ed.2d 863 (1958) (physician's testimony concerning the extent of defendant's severely cut hand and identification of bandage was not privileged where sheriff was present during treatment and any information acquired was "readily discernible" to all); *State v. George,* 223 Kan. 507, 575 P.2d 511 (1978) (physician's opinion that defendant was under influence of alcohol, based upon examination at jail, was privileged because information so obtained was not "transmitted to or through" officers who were present); *State v. Broussard,* 12 Wash.App. 355, 529 P.2d 1128 (1974) (physician's testimony concerning removal of bullet from defendant not barred by privilege where defendant told the officers who took him to the hospital that he was shot and wanted bullet removed and where bullet was visible under the skin).

Turning to the facts in this case, the record establishes that the defendant was treated in the presence of police officers in the emergency area. He suffered gunshot wounds to the arm and chest which were readily discernible and apparent to everyone present. Furthermore, the testimony of both medical personnel was limited to information acquired through observation and examination. Neither Blum nor the nurse testified to any verbal statement or communication the defendant may have made to them. Under these circumstances, we conclude that the admission into evidence of the bullet and the challenged testimony did not violate the defendant's physician-patient privilege.

## V.

■ The defendant contends that the trial court erred in admitting the weapon fired by Lewis and the bullet removed from the defendant on the grounds that the People failed to prove the chain of custody from the time the items were taken into custody until the time they were introduced as evidence. Lewis identified the weapon at trial as the one he fired on the night of the robbery. He further testified that it was in the same condition as on the night of the robbery. The bullet was admitted into evidence through the testimony of Detective Wedge, who identified the bullet as the one removed from the defendant. Wedge stated that he saw the bullet removed from the defendant's body by Blum, who later gave him the bullet. Under cross-examination, Wedge admitted that he had not initialed the bullet but stated that he could identify the bullet from its distinctive indentations. The record here demonstrates that both the weapon and the removed bullet were adequately identified and sufficiently connected with the crime to justify admission. *E.g., People v. Fite,* 627 P.2d 761, 767 (Colo.1981) (bloodstained mattress properly identified); *Reynolds v. People,* 172 Colo. 137, 142, 471 P.2d 417, 420 (1970) (work sheets); *Washington v. People,* 158 Colo. 115, 405 P.2d 735 (1965) (weapon).

## VI.

■ We next turn to defendant's contention that there was insufficient evidence to submit the two counts of aggravated robbery to the jury. He claims the prosecution introduced no evidence that the wal-

let taken from Lewis contained any money or that it had any value. He also asserts that nothing of value was taken from Butler and that she was not the owner of anything taken from the motel office. Our examination of the record discloses substantial and sufficient evidence to support the jury's verdict. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

■ Section 18–4–301, 8 C.R.S. (1978), provides that a person commits robbery where they knowingly take "anything of value from the person or presence of another" by the use of force, threats, or intimidation. The term "anything of value," as used in this section, "includes real property, tangible and intangible personal property, contract rights, choses in action, services, and any rights of use or enjoyment connected therewith." § 18–1–901(3)(r), 8 C.R.S. (1978). The kind and value of property taken in a robbery prosecution is immaterial. *Maes v. People*, 178 Colo. 46, 494 P.2d 1290 (1972) (defendant's instruction that robbery carries with it the lesser included offenses of petty and grand theft improper because kind and value of property immaterial). The gravamen of the offense is the manner of the taking. *Sterling v. People*, 151 Colo. 127, 376 P.2d 676 (1962), *cert. denied*, 373 U.S. 944, 83 S.Ct. 1554, 10 L.Ed.2d 699 (1963) (value of wristwatch taken was immaterial); *Rowan v. People*, 93 Colo. 473, 26 P.2d 1066 (1933) (value of $49.81 taken from gas station immaterial).

The evidence, when appropriately viewed, required the submission of both counts of aggravated robbery to the jury. Lewis testified, and defendant does not dispute, that his wallet was taken from him. The fact that there was no evidence of any coin or currency in the wallet is of no consequence. The wallet itself is personal property and supports a reasonable inference that a "thing of value" was taken from Lewis. The evidence further shows that money and traveler's checks were kept in the cash drawer at the motel. Butler testified that she was not going to fight for the money and had told the robbers "here's

the money." When viewed in the light most favorable to the prosecution, this evidence was more than adequate to enable a reasonable person to conclude that money was taken from Butler's presence. *People v. Bartowsheski*, 661 P.2d 235, 241 (Colo. 1983); *People v. Brassfield*, 652 P.2d 588, 592 (Colo.1982).

■ Defendant's assertion that the evidence failed to show Butler owned the money taken from the motel is immaterial. The statute defining robbery provides that anything of value taken from the person "or presence" of another will suffice. § 18–4–301(1), 8 C.R.S. (1978). It is not necessary to allege that the person from whom the property is taken was the owner if it sufficiently appears from the allegations that the accused was not the owner. *Hampton v. People*, 146 Colo. 570, 362 P.2d 864 (1961). Irrespective of where legal title lies, ownership may be properly laid in the person from whose physical possession the property was taken. *Id.* We are also satisfied that the prosecution established a taking of the property "from the presence" of Butler.

## VII.

The defendant argues that the trial court committed reversible error by refusing to instruct the jury on alibi. The defense tendered the following instruction to the trial judge:

The evidence presented in this case has raised the issue of the affirmative defense of alibi. The prosecution, therefore, has the burden of proving to your satisfaction beyond a reasonable doubt the guilt of the Defendant as to that issue as well as to all of the elements of the crimes charged. If, after consideration of all of the evidence concerning the affirmative defense, along with all of the other evidence, you are not convinced beyond a reasonable doubt of the guilt of the Defendant, then you must find the Defendant not guilty.

The defendant points to the following evidence as entitling him to the alibi instruction. The defendant's mother, stepfa-

ther, and brother testified that they picked up a truck, to which the defendant had access, in the vicinity of the Las Animas and Royer intersection on July 7, 1980, about 6:30 p.m., approximately 40 hours after the robbery. None of these witnesses knew of defendant's whereabouts at the time of the robbery. The trial court also found that their testimony did not establish that the defendant had exclusive use of the truck.

In addition, defendant introduced two "non-serious cards" prepared by the Colorado Springs Police Department (the Department). Non-serious cards are records kept by the Department which indicate exact times complaints are received, investigated, and determined to require no further action. The first card indicated that a caller complained at 2:32 a.m. on July 6, 1980, that a man was assaulted in a bar, unknown as to where, and the officer was to go to the St. Francis Hospital emergency room. The second card showed that someone near the corner of Las Animas and Royer thought they heard yelling and then gunshots from a nearby party at 2:49 a.m. The Department's records custodian testified that the disposition code on the second card indicated that the officer investigating the party gave a verbal warning. He further testified that if the officer had found that a gun had been fired, then more action than a notation on a non-serious card would have been taken, if not an actual case report filed. No evidence was introduced tying the defendant to the incidents reported on either card.

The defendant now argues that his theory of the case was that the "wounds he received were sustained in close proximity to his truck and the [first card] indicated that the officer was to report to St. Francis

emergency room where the defendant was ultimately arrested."

■■ The general rule is that an instruction embodying the defendant's theory of the case must be given if there is any evidence in the record to support it. *People v. Dillon*, 655 P.2d 841, 845 (Colo.1983); *People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (1979); *People v. Truesdale*, 190 Colo. 286, 546 P.2d 494 (1976); *Payne v. People*, 110 Colo. 236, 132 P.2d 441 (1942). A defendant is entitled to his instruction no matter how improbable or unreasonable his contention may be, but "[i]t must be borne in mind that the contention referred to must be one grounded upon the evidence, neither a mere fanciful invention of counsel nor one involving an impossibility." *Payne v. People*, 110 Colo. at 240, 132 P.2d at 442. None of the evidence introduced and relied upon by the defendant indicates "that he was at a place other than that specified [by the prosecution]." § 16–7–102, 8 C.R.S. (1978). Thus, defendant's theory was not grounded upon evidence in the record. We find no error in the trial court's refusal to submit the instruction to the jury.

## VIII.

■■ Defendant also attacks the language of the complicity instruction tendered by the prosecution. Instruction No. 14 read:

A person is guilty of an offense if it is committed by another person for whom he is legally accountable. A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he aids, abets, or advises such other person in planning or committing the offense.

Defendant concedes that the instruction was based upon sections 18–1–601 and 18–1–603, 8 C.R.S. (1978),[9] and the pattern jury

9. Sections 18–1–601 and 18–1–603, 8 C.R.S. (1978), provide:

 **18–1–601. Liability based upon behavior.** A person is guilty of an offense if it is committed by the behavior of another person for which he is legally accountable as provided in sections 18–1–602 to 18–1–607.

 . . . .

 **18–1–603. Complicity.** A person is legally accountable as principal for the behavior of another constituting a criminal offense if with the intent to promote or facilitate the commission of the offense, he aids, abets, or advises the other person in planning or committing the offense.

instruction for complicity in use at the time of trial.[10] Defendant urges, however, that the exact terminology employed in *People v. Martin*, 192 Colo. 491, 561 P.2d 776 (1977), should have been used even though no alternative instruction was tendered at trial. The *Martin* court did outline the elements of the complicity offense, but did not prescribe specific language for a complicity instruction.[11] We have previously held that a complicity instruction "basically in the language of the statute" may be sufficient. *People v. R.V.*, 635 P.2d 892, 894 (Colo.1981).[12] Here, the complicity instruction which paralleled the statute was also sufficient. The submission of such an instruction did not constitute reversible error.

## IX.

The defendant next contends that the trial court erred in submitting and accepting a general verdict of guilty to the crime of aggravated robbery and thus deprived him of his right to a unanimous jury verdict. § 16–10–108, 8 C.R.S. (1978); Crim.P. 23(a)(8) and 31(a)(3).

The trial court instructed the jury on the general requirement of a unanimous verdict and that aggravated robbery can be committed in two alternative ways, one requiring specific intent, and the other knowing conduct. *See* § 18–4–302(1)(a) to –302(1)(b), 8 C.R.S. (1978). The defendant objected to the latter instruction and requested that the prosecution choose one

theory, or, in the alternative, that the verdict form designate which manner of commission of the crime provided the basis for the jury's verdict. Both requests were denied.

In *People v. Ledman*, 622 P.2d 534 (Colo. 1981), we held that the culpability requirements for attempted aggravated robbery are alternative, but not mutually exclusive, and contrary to Ledman's argument, jury instructions on the alternative culpability elements of specific intent and knowledge did not characterize them as mutually exclusive.

In *People v. Taggart*, 621 P.2d 1375 (Colo.1981), decided a week before *Ledman*, we held that the acceptance of a general verdict of guilty for child abuse did not deprive the defendant of his right to a unanimous verdict where the court instructed the jury that the crime could be committed in alternative ways. Citing *Hernandez v. People*, 156 Colo. 23, 30, 396 P.2d 952, 955 (1964), we reaffirmed the general principle that evidence of any of the alternative ways that a crime can be committed will support a general verdict. In addition, we noted that, "[s]tate courts consistently have held that unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed." *Taggart*, 621 P.2d at 1387 n. 5.[13]

---

**10.** The pattern jury instruction for complicity in effect at the time of trial can be found in *People v. R.V.*, 635 P.2d 892, 893 (Colo.1981). There, the jury was instructed on the elements of complicity in the same words as used in Instruction No. 14. The complicity instruction currently in use is found at CJI–Crim. 6:04.

**11.** The holding in *Martin* was that the trial court erred in ruling that unless the principal was named in the count charging the defendant with aggravated robbery committed by the principal, such defendant could not be considered as a principal under the complicity statute. 192 Colo. at 493, 561 P.2d at 777.

**12.** Three justices dissented in *People v. R.V.* because they found the trial court's refusal to give the defendant's tendered instructions defining "specific intent" or "intentionally or with intent"

with the complicity instruction may have enabled the jury to find the defendant guilty on the less culpable mental state of "knowingly," the *mens rea* of the underlying substantive offense of motor vehicle theft. 635 P.2d at 896. The need for such concern is absent in this case. Here, the jury was instructed on specific intent.

**13.** The specially concurring opinion adopts the analysis set forth in *United States v. Gipson*, 553 F.2d 453 (5th Cir.1977). However, we rejected that approach in *Taggart* when we noted that subsequent federal cases have found *Gipson* inapplicable where the jury "is instructed on the alternative methods of committing a crime and on the requirement of a unanimous verdict."

■ Here, the jury was instructed on the two alternative ways the crime of aggravated robbery could be committed, and that their verdict must be unanimous. The culpability requirements for aggravated robbery are alternative, but not mutually exclusive, and evidence establishing any one alternative will support a general verdict. In addition, there was ample evidence to support a guilty verdict on either or both ways of committing the offense. Accordingly, we hold that the trial court's submission and acceptance of the general verdict did not deprive the defendant of his right to a unanimous verdict.

### X.

The defendant next alleges a number of errors during the habitual criminal portion of trial. He first argues that People's Exhibits 19 and 21, copies of his Colorado and federal prison records, were not "duly authenticated" as required by section 16–13–102, 8 C.R.S. (1983 Supp.).[14] Both exhibits are essential links in proving defendant's prior convictions.

Exhibit 19, defendant's Colorado prison record, was certified to be a true and correct copy by the custodian of records at the Canon Correctional Facility. Judge Lundquist of the Fremont County Court certified that the prison custodian was the official custodian of the records. Finally, the clerk of the Fremont County Court, under the seal of that court, certified that the judge was duly commissioned and authorized by law to execute his certification.

Exhibit 21, defendant's federal prison record, was certified by the custodian of records at the Federal Correction Institution located within the jurisdiction of the United States District Court for the Western District of Texas. A federal magis-

trate, under the seal of that federal district court, certified that the custodian was the legal custodian of the records. And the clerk of that same court, under seal, certified that the magistrate was duly commissioned, qualified, and authorized by law to execute his certification.

■ Defendant contends that because the warden of the Canon Correctional Facility did not certify the prison custodian, Exhibit 19 was not duly authenticated. The validity of the federal records was questioned on similar grounds. The trial judge took judicial notice of the fact that the Canon Correctional Facility is located in Fremont County and he found that the Federal Correction Institution was located in the district where the magistrate presided. Both the certifications of the magistrate and Judge Lundquist that the custodians were indeed the legal custodians are entitled to a presumption of validity. *City of Colorado Springs v. District Court,* 184 Colo. 177, 519 P.2d 325 (1974). Defendant presented no evidence to rebut this presumption; therefore, his claim that the records were not "duly authenticated" on the basis that courts exercising their lawful authority certified the custodians, and not corrections officials, is without merit.

■ Defendant's additional argument that a copy of the judgment of the Colorado district court which convicted him of burglary was not properly certified is also without merit. He claims that because a copy of the judgment was attached to his prison record, the Fremont County judge was able to certify a judgment which was not rendered in his court, thus circumventing the requirements of *Brown v. People,* 124 Colo. 412, 238 P.2d 847 (1951). The record reveals that the prosecutor made no attempt to circumvent *Brown* by entering

---

**14.** Section 16–13–102, 8 C.R.S. (1983 Supp.) provides:

On any trial under the provisions of this part 1, a duly authenticated copy of the record of former convictions and judgments of any court of record for any of said crimes against the party indicted or informed against shall be prima facie evidence of such convictions and may be used in evidence against such

party. Identification photographs and fingerprints that are part of the record of such former convictions and judgments of any court of record or are part of the record at the place of such party's incarceration after sentencing for any of such former convictions and judgments shall be prima facie evidence of the identity of such party and may be used in evidence against him.

the judgment of the convicting court in this manner. A certified copy of the judgment, apart from the prison record, was offered and admitted during the habitual criminal proceeding. The defendant has not attacked the authenticity of this document.

## XI.

 After the information was amended on September 2, 1980, by adding two counts, alleging prior felony convictions in 1971 and 1976, defendant filed a motion to dismiss one habitual criminal count [15] involving the federal offense of bail jumping.[16] He argued that he had not been adequately advised and that no factual basis for his guilty plea to bail jumping was established at the providency hearing as required by Fed.R.Crim.P. 11.[17] Defendant contends the trial court erred in finding that his 1976 plea was not obtained in violation of the rule.[18]

 This court has previously held that a prior state conviction resulting from a constitutionally defective plea of guilty cannot be used in a subsequent criminal proceeding to enhance punishment under the habitual criminal statute. *Watkins v. People*, 655 P.2d 834 (Colo.1982) (trial court failed to explain elements of conspiracy and other crime which was the alleged object or purpose of the conspiracy). *But see People v. Leonard*, 673 P.2d 37 (Colo.1983) (trial court's dismissal of habitual criminal counts was disapproved on appeal where defendant's pleas were voluntarily and understandingly made). Federal convictions resulting from defective pleas of guilty should likewise not be used in subsequent criminal proceedings to enhance punishment.

We begin by examining whether the federal district court which accepted the defendant's plea properly advised him of the nature of the charge of bail jumping. In assessing the validity of the defendant's guilty plea, we are guided by the provisions of Rule 11 of the Federal Rules of Criminal Procedure in effect at the time the plea

**15.** Section 16–13–101(1), 8 C.R.S. (1983 Supp.) provides:

> Every person convicted in this state of any felony for which the maximum penalty prescribed by law exceeds five years who, within ten years of the date of the commission of said offense, has been twice previously convicted upon charges separately brought and tried, and arising out of separate and distinct criminal episodes, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony shall be adjudged an habitual criminal and shall be punished by confinement in a correctional facility for a term of not less than twenty-five years nor more than fifty years.

**16.** The federal crime of bail jumping is codified at 18 U.S.C. § 3150 (1982). Section 3150 provides:

> Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, ... incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined

not more than $5,000 or imprisoned not more than five years, or both....

**17.** If a direct attack by a defendant demonstrates that a federal district court accepts a defendant's guilty plea without fully adhering to the procedure provided for in Rule 11, the defendant is entitled to plead anew. *McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). For the purposes of this opinion, however, the defendant's successful collateral attack on his earlier conviction arising out of a possibly defective guilty plea would only bar the use of such conviction in an habitual criminal proceeding. *Watkins v. People*, 655 P.2d 834 (Colo.1983).

**18.** We are not impressed with defendant's argument that bail jumping was not a felony in Colorado at the time of defendant's plea in 1976. It makes no difference for the purposes of enhanced punishment that a previously committed crime is not a felony in Colorado if it is a felony where the conviction was had. *People v. Renfrow*, 199 Colo. 101, 605 P.2d 915 (1980). The time as well as the place of commission of a crime determines its felony status under section 16–13–101(1). *Id.* The applicable section of the habitual offender statute specifically provides that felonies "under the laws of ... the United States" may form the basis for punishment as an habitual offender. § 16–13–101(1), 8 C.R.S. (1983 Supp.).

was entered. In 1976, the rule provided in pertinent part:

> (c) **Advice to the Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
>
> > (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law....

Fed.R.Crim.P. 11.[19] The purpose of the rule is two-fold: "to assist the [federal] district judge in making the constitutionally required determination that the defendant's guilty plea is truly voluntary" and "to produce a complete record at the time the plea is entered of the factors relevant to the voluntariness determination." *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969).

▪▪▪▪ The federal rule existing in 1976 specified no particular procedure in which a defendant's understanding of the nature of the charge is to be determined by the court. "The method by which the defendant's understanding of the nature of the charge is determined may vary from case to case, depending on the complexity of the circumstances and the particular defendant." Fed.R.Crim.P. 11, Notes of Advisory Committee on Criminal Rules. The determination depends, in part, upon the complexity of the crime charged.[20] *Eagle Thunder v. United States,* 477 F.2d 1326, 1328 (8th

Cir.), *cert. denied,* 414 U.S. 873, 94 S.Ct. 142, 38 L.Ed.2d 92 (1973). In *Eagle Thunder,* Rule 11 was met where the defendant was prosecuted for the crime of assault with a deadly weapon, the trial court asked the defendant if he did willfully, knowingly, and unlawfully assault Moses Anderson McBride with a dangerous weapon, and the defendant answered affirmatively. Where the charge is more complicated, more explanation is required. In *Irizarry v. United States,* 508 F.2d 960 (2d Cir.1974), the defendant was charged with conspiracy to possess and distribute cocaine. That court held that the charge was never "fully identified," the district court's limited explanation of conspiracy did not "meet the requirement of *McCarthy* that the court determine the defendant's 'understanding of the essential elements of the crime ...' 394 U.S. at 471 [89 S.Ct. at 1173]," 508 F.2d at 965, and at no time did the defendant acknowledge that he understood the nature of the charge nor could such understanding be inferred from any of the defendant's remarks. Therefore, the district court did not comply with Rule 11 in accepting the defendant's guilty plea. *But see Paradiso v. United States,* 482 F.2d 409 (3d Cir.1973) (in prosecution for conspiracy to possess goods stolen from interstate commerce, court is not precluded from reading indictment in explaining nature of charges and should exercise discretion in determining when additional explanation needed). In *Majko v. United States,* 457 F.2d 790 (7th Cir.1972), the

---

19. The requirement that the court accepting the plea properly advise the defendant of the nature of the charge has always been a part of the rule. The original rule required the court to determine that the plea was made with an "understanding [of] the nature of the charge and the consequences of the plea." Fed.R.Crim.P. 11, Notes of Advisory Committee on Criminal Rules. The current version of 11(c)(1) contains the additional requirement that the defendant understands "the effect of any special parole term."

20. This court has made a similar distinction in determining whether prior state convictions met the requirements of Crim.P. 11. We have distinguished those charges such as conspiracy or assault to rob where the elements of the offense

are not readily understandable without further explanation, from those charges such as aggravated robbery and second-degree murder that are easily understandable to a person of average intelligence. *People v. Leonard,* 673 P.2d 37, 39 (Colo.1983); *People v. Muniz,* 667 P.2d 1377, 1382 (Colo.1983).

In *People v. Edwards,* 186 Colo. 129, 526 P.2d 144 (1974), we held that a reading of the charge is sufficient explanation of the substantive crime where the defendant pleads guilty to a charge of aggravated robbery. Similarly, in *People v. Gorniak,* 197 Colo. 289, 593 P.2d 349 (1979), a mere reading of the charge was sufficient explanation where the defendant pleaded guilty to second-degree murder.

defendant was charged with violating state law on a federal enclave. That court held that "[r]eading the indictment and asking whether a defendant had discussed the charge with his attorney does not satisfy *McCarthy.*" 457 F.2d at 791. Similarly, in a prosecution for making a false and fictitious statement to a licensed firearms dealer in order to buy a firearm, it was held that the trial court improperly accepted a guilty plea after simply reading the indictment to the defendant and asking if counsel had explained the charges. *United States v. Cody,* 438 F.2d 287 (8th Cir.1971), *cert. denied,* 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972).

■ Although the crime of bail jumping is a relatively simple one, our concern is whether the district court accepting the plea properly determined the defendant's "understanding of the essential elements of the crime." *McCarthy v. United States,* 394 U.S. 459, 471, 89 S.Ct. 1166, 1173, 22 L.Ed.2d 418 (1969). Our test has been whether the court's explanation is understandable to a person of average intelligence. *People v. Leonard,* 673 P.2d 37 (Colo.1983); *People v. Muniz,* 667 P.2d 1377 (Colo.1983).

■ In this case, the transcript of the providency hearing discloses that the plea was not the result of any plea agreement involving the dismissal of more serious charges. The defendant was represented by counsel and appeared simultaneously with two other persons who pleaded to different charges. The court did not limit its explanation of the charge to a mere reading of the indictment, but began by explaining the charge as follows: "First of all, Mr. Marquez, you are here on a charge of bail jumping, failure to appear in court when you're supposed to, having, theretofore, been let free on a bond that you would appear." Later in the proceeding, the court specifically asked the defendant whether he failed to appear for his arraignment, whether he knew he was supposed to be there, and whether he knew he was not going to appear. The defendant responded affirmatively to all questions. These ex-

changes were more than adequate to establish that the defendant understood the nature of bail jumping.

■ We next consider whether a factual basis for the plea was established. A federal court "should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.R.Crim.P. 11(f). Under the rule, "the sentencing judge must [also] develop, on the record, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge." *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

Defendant contends that no factual basis was developed on the record for the element of willfulness, the *mens rea* for bail jumping. He argues that because he attended a funeral within the geographical limits of the bond and appeared only one day late, his conduct did not rise to the level of willfulness found in those cases which have examined willfulness under the bail jumping statute. *E.g., United States v. Phillips,* 625 F.2d 543 (5th Cir.1980) (willfulness found where defendant altered his appearance and was arrested three and one-half months after failure to appear); *United States v. Dorman,* 496 F.2d 438 (4th Cir.), *cert. denied,* 419 U.S. 945, 95 S.Ct. 214, 42 L.Ed.2d 168 (1974) (willfulness found where defendant was apprehended beyond the geographical limits of the bond approximately one month after the failure to appear); *United States v. Hall,* 346 F.2d 875 (2d Cir.), *cert. denied,* 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965) (willfulness found where defendant twice changed his name and fled 5,000 miles from the jurisdiction). Although the defendant's conduct is distinguishable from that found in these cases, we cannot say his conduct did not establish an adequate factual basis to satisfy the federal district court before it accepted his plea. The defendant admitted that he willfully chose to travel to a funeral instead of appearing in court for a felony charge when he knew that he was released on bond and he knew he was required to

appear. We find such admissions developed a sufficient factual basis in the record to support the plea.

We hold that defendant's plea was not accepted in violation of Fed.R.Crim.P. 11 and that the bail jumping conviction was properly used in the habitual criminal proceeding. Therefore, the trial court did not err in refusing to dismiss the count alleging a prior conviction for bail jumping.

Accordingly, the judgment of the trial court is affirmed in all respects.

LOHR, J., specially concurs.

DUBOFSKY and NEIGHBORS, JJ., join in the special concurrence.

LOHR, Justice, specially concurring:

The majority concludes that the defendant was not denied his right to a unanimous verdict when, despite his timely objection, the court submitted the case to the jury for a general verdict instead of utilizing a verdict form that would have required the jury to specify the manner in which the aggravated robbery was committed. Although I disagree with this conclusion, I believe that the trial court's ruling constituted harmless error, and therefore concur in the judgment of the court.

The trial court instructed the jury pursuant to section 18-4-302, 8 C.R.S. (1978), that aggravated robbery can be committed in alternative ways, involving different acts and different culpable mental states.[1] The defendant objected to this instruction, and requested that the district attorney choose one theory of prosecution, or, in the alternative, that the verdict form require the jury to designate the manner in which the crime was committed if the jury should arrive at a verdict of guilty. Both of these requests were denied by the trial court. In

reaching this decision, the court interpreted unspecified recent cases from this court as holding that a jury need not reach a unanimous verdict on a particular manner of commission of any offense. Under this interpretation, only a verdict reflecting that all jurors agree that the defendant committed the offense one way or the other is necessary. This view has been adopted by the majority. I disagree with this reading of our cases.

In *People v. Ledman*, 622 P.2d 534 (Colo. 1981), and *People v. Taggart*, 621 P.2d 1375 (Colo.1981), we addressed this issue. In both cases, however, we noted that the defendant had failed to object during the proceedings to an instruction inviting a general verdict, and under those circumstances held that a general instruction on the necessity of unanimity was sufficient. Implicit in those decisions is the principle that a defendant has a right to request a verdict form that identifies the method of commission of the crime, at least where the alternative methods encompass conceptually distinct and different combinations of material acts and culpable mental states. In the case now before us, the defendant made such a timely request, and the trial court erred in refusing to grant it.

The defendant was charged with commission of aggravated robbery in alternative ways which, although not necessarily mutually exclusive under the facts of this case, involve combinations of conduct and mental culpability elements that are conceptually distinct and different from each other. First, he could have been found guilty based on a jury determination that he was armed with a deadly weapon and intended, if resisted, to kill, maim or wound another person. § 18-4-302(a), 8 C.R.S. (1978). Second, the defendant could have

---

**1.** The relevant manners in which aggravated robbery can be committed are set forth in subsections (a) and (b) of section 18-4-302, which provide that:

A person who commits robbery is guilty of aggravated robbery if during the act of robbery or the immediate flight therefrom:

(a) He is armed with a deadly weapon with intent, if resisted, to kill, maim, or wound the person robbed or any other person; or
(b) He knowingly wounds or strikes the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury....

been found to have committed aggravated robbery because he knowingly wounded or struck another person with a deadly weapon. § 18–4–302(b), 8 C.R.S. (1978). Finally, the defendant's guilt could have been bottomed on a determination that he knowingly put a person in reasonable fear of death or bodily injury by the use of force, threats, or intimidation with a deadly weapon. § 18–4–302(b), 8 C.R.S. (1978). The second and third methods of elevation of the crime of robbery to the more serious offense of aggravated robbery involve acts additional to the mere possession of a deadly weapon required under the first method. The first method requires specific intent, a more culpable mental state than the knowing conduct required to support conviction under the second and third.[2]

It is implicit in *Ledman* and *Taggart* that the defendant was entitled to submission of special verdict forms to the jury upon timely request. Under the circumstances of this case, I believe that, in order to have found the defendant guilty of aggravated robbery, the jury should have been required to agree unanimously upon the essential acts and mental state upon which their verdict was based. By holding otherwise, the majority greatly dilutes the unanimous jury verdict right guaranteed to the defendant by section 16–10–108, 8 C.R.S. (1978), and Crim.P. 23(a)(8) and 31(a)(3).

In reaching this conclusion, I am aware that there are decisions from other states that would permit the sort of patchwork verdicts I would find impermissible. *See, e.g., People v. Sullivan,* 173 N.Y. 122, 65 N.E. 989 (1903). I believe, however, that the better reasoned approach is to be found in Judge Wisdom's opinion in *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977), reversing a conviction because of a trial court instruction to the jury that they could convict if all agreed that the defendant was guilty of the offense charged even

if in disagreement as to the acts of the defendant upon which their conclusion of guilt was predicated. As the Fifth Circuit Court of Appeals there stated:

> Like the "reasonable doubt" standard, which was found to be an indispensable element in all criminal trials in *In re Winship,* 1970, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, the unanimous jury requirement "impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue". 397 U.S. at 364, 90 S.Ct. at 1072, 25 L.Ed.2d at 375 (footnote omitted). The unanimity rule thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged. Requiring the vote of twelve jurors to convict a defendant does little to insure that his right to a unanimous verdict is protected unless this prerequisite of jury consensus as to the defendant's course of action is also required (footnote omitted).

553 F.2d at 457–58; *see generally* Note, *Right to Jury Unanimity on Material Fact Issues: United States v. Gipson,* 91 HARV.L.REV. 499 (1977).

Notwithstanding my disagreement with the majority concerning the general verdict form issue, I agree that the judgment of conviction should be affirmed because the evidence of the defendant's guilt as to all charged methods of committing aggravated robbery is overwhelming. Therefore, the trial court's ruling on this issue must be considered harmless error. *See United States v. Pavloski,* 574 F.2d 933 (7th Cir. 1978).

I am authorized to say that Justice DUBOFSKY and Justice NEIGHBORS join in this special concurrence.

---

**2.** Unlike the child abuse offense discussed in *People v. Noble,* 635 P.2d 203 (Colo.1981), the charged methods of commission of the crime in question here, at least in part, "involve alternative forms of culpability or conduct which are so discrete and independent that, as a practical matter, a verdict of guilty to one alternative reasonably could be interpreted as exclusive of the other." 635 P.2d at 211.