**Patricia Mae CASE, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 88SC6.**

Supreme Court of Colorado,
En Banc.

May 30, 1989.

Rehearing Denied June 19, 1989.

Robert M. Moyers, Colorado Springs, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for respondent.

ERICKSON, Justice.

We granted certiorari to review the court of appeals unpublished opinion in *People v. Case*, 85CA1676 (Colo.App. Nov. 12, 1987), which affirmed the trial court's refusal to submit a self-defense instruction to the jury. We affirm.

I.

The petitioner, Patricia Mae Case, was charged with reckless manslaughter[1] following an altercation in which she stabbed and fatally wounded Gregory Carter. Although the sequence of events and the evidence surrounding the stabbing conflicted and were hotly disputed at trial, certain conclusions can be drawn from the record before us.

Case and Carter were involved in an intimate relationship. Carter, who lived with his mother, often stayed at Case's apartment. Case, who was approximately five feet tall and weighed 100 pounds, and Carter, who was six feet tall and weighed 180 pounds, had a history of violent arguments. On December 16, 1984, Case and Carter began to argue in Case's apartment. After arguing for a half hour, Carter left to make a telephone call from the building's laundry room. Carter had been gone for twenty minutes when Case decided to go check on him. Because several assaults had occurred recently in the building, Case put a paring knife in the waistband of her pants for self-protection. She spoke briefly to Carter in the laundry room, and then they returned to the apartment.

Case testified that she told Carter that he should go stay at his mother's house for a while. According to Case's testimony, Carter became angered and struck her in the face, knocking her down.[2] At this

---

1. Pursuant to section 18–3–104(1)(a), 8 C.R.S. (1978), "[a] person commits the crime of manslaughter if: (a) He recklessly causes the the death of another person." Under section 18–1–501, 8 C.R.S. (1978), "[a] person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or a circumstance exists."

The grand jury indictment under which Case was charged states that "[o]n or about December 16, 1984, Patricia Mae Case did unlawfully, feloniously and recklessly cause the death of Gregory A. Carter, by stabbing Gregory A. Carter with a knife; in violation of Colorado Revised Statutes 18–3–104, as amended, manslaughter (F–4)." Given this charge, it is clear that the indictment was for reckless manslaughter, section 18–3–104(1)(a), 8 C.R.S. (1978).

2. Case's testimony alleging that Carter had struck her on the night of the stabbing was controverted by testimony from the police officer who questioned Case immediately after the stabbing. According to the officer, Case had no marks on her face which would indicate that she had been struck, nor were her clothes torn. When asked whether she "observe[d] any type of injury of any kind, of any nature to any extent, to any degree," the officer responded "No, I did not." The officer's response to the question is supported by a full facial photograph of Case contained in the record. This photograph, taken the night of the stabbing,

point, Case's trial testimony contradicts the statements she made to police the night of the stabbing. According to Officer Shelly Weber, who interviewed Case that night, Case said that after Carter knocked her down, "she got up from the floor and ... automatically stabbed" Carter. At trial, however, Case gave a different version of what happened after she was knocked down. Case stated that when she was knocked down, the paring knife, which was still in her waistband, began to poke her in the leg. Case testified that although she told Carter that she was going to take the knife out of her waistband to relieve the discomfort, Carter continued to proceed towards her. According to Case, Carter grabbed her in a "bear hug" and, as he squeezed and lifted her up, she reached into her waistband for the knife. Case stated that "somehow" she removed the knife from her pants. Then, according to Case's testimony, Carter "moved into the knife and that was when he got stabbed." Carter died from his wounds.[3]

Case was charged with reckless manslaughter and was tried by a jury. The trial court instructed the jury on reckless manslaughter and the lesser included offense of criminally negligent homicide.[4] The defense tendered three different self-defense instructions and requested that the court submit one of them to the jury.[5] The court denied the request because, in its view, the tendered instructions were not supported by the evidence and not required under the rule announced in *People v. Fink*, 194 Colo. 516, 574 P.2d 81 (1978). Specifically, the trial court stated that Case

> testified that the paring knife was sticking her in the side and it was uncomfortable, in other words, and that the decedent picked her up in what has been referred to as a bear hug, she took it out because it was sticking her while she was being held up in midair by him. Of course, she was just wanting to remove an uncomfortable object, she could have removed it and, of course, dropped it, but instead he wound up with two stab wounds, one of which was fatal through the heart.

> So far as the affirmative defense of self defense is concerned, I do feel that the case of People versus Fink noted at 574 P.2d 81 resolves this matter. The Grand Jury indicted her on a charge of manslaughter, that is reckless man-

---

shows no evidence that Case had been struck in the face.

There was, however, substantial testimony presented by defense witnesses at trial that Carter had, on previous occasions, physically abused Case.

3. Case testified that she stabbed Carter only once. However, the physician who performed the autopsy on Carter testified that there was a superficial chest wound and two puncture wounds into the heart. Based on these wounds, the physician testified that Carter had been stabbed three times, not once.

4. Section 18-3-105, 8 C.R.S. (1984 Supp.), provides that: "Any person who causes the death of another person by conduct amounting to criminal negligence commits criminally negligent homicide which is a class 1 misdemeanor." Section 18-1-501(3), 8 C.R.S. (1978), provides that: "A person acts with criminal negligence when, through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists."

5. The three jury instructions provided, respectively:

*Instruction 1:* It is Patricia Case's theory of defense that when she removed the paring knife from her pants she did not act recklessly. She reasonably believed to be in danger of imminent serious bodily injury and as a result of that belief she used the knife in an effort to protect herself.

*Instruction 2:* When a person has reasonable grounds for believing, and does in fact actually believe, that danger of her being killed, or of receiving great bodily harm, is imminent, she may act on such appearances and defend herself, even to the extent of taking human life when necessary, although it may turn out that the appearances were false or although she may have been mistaken as to the extent of the real or actual danger.

*Instruction 3:* It is an affirmative defense to the crime of Manslaughter that the defendant used deadly physical force because

1. she reasonably believed a lesser degree of force was inadequate, and

2. had reasonable grounds to believe, and did believe that she or another person was in imminent danger of being killed or of receiving great bodily injury. Gregory Carter was committing or reasonably appeared to be about to commit assault.

slaughter, and the evidence I have heard certainly would support that charge if not perhaps a higher charge. But the Grand Jury had its say and that's what they arrived at. The entire testimony of the defendant ... [was] that she at no time had any intent to harm the defendant, let alone kill him.

. . . .

She has not asserted that she during her testimony pulled this knife in order to protect herself and she had no intent to protect herself. She did not testify that she did it to protect herself.

She is saying, in effect, that if anything it was an accident, and so clearly under Fink I do not feel that the affirmative defense of self defense is proper, and should not be given.

I think my remarks in ruling at this time would also apply to Defendant's Tendered Instructions 2 and 3. Particularly when she is not claiming that she even intended to injure him. These deal with where she reasonably believes that he is about to use deadly physical force and she may do so and so. But I just don't think it's applicable under the testimony.

The jury found Case guilty of reckless manslaughter and she was sentenced to four years in the Department of Corrections.

On appeal, the court of appeals affirmed the conviction. It relied on *People v. Fink* in concluding that when a defendant is charged with a crime that has as an element either recklessness or criminal negligence, and the jury is instructed as to each and every element of the crime, a self-defense instruction need not be given. Because Case was tried for reckless manslaughter and criminally negligent homicide, and the instructions submitted to the jury contained each element of those charges, no self-defense instruction was held to be required.

## II.

In our view, the court of appeals properly construed *People v. Fink*, 194 Colo. 516, 574 P.2d 81 (1978). Since the charges sub-mitted to the jury were reckless manslaughter and criminally negligent homicide in the present case, the trial court was not required to submit a self-defense instruction to the jury even though there was some evidence of self-defense.

In *People v. Fink*, the respondent was charged with second-degree murder. *People v. Fink*, 194 Colo. at 517, 574 P.2d at 82. Conflicting testimony was presented at trial which raised the question of whether the respondent acted in self-defense. *Id.* At the close of the evidence, the trial court instructed the jury on second-degree murder and the lesser included offenses of reckless manslaughter and criminally negligent homicide. Under the statute in effect at the time *Fink* was decided, criminally negligent homicide could be committed either by conduct amounting to criminal negligence or by intentionally causing the death of a person in a good faith but unreasonable belief that justification existed. § 18–3–105(1)(a) & (b), 8 C.R.S. (1973). The trial court submitted the respondent's self-defense instructions to the jury on the second-degree murder and "unreasonable belief of justification" criminally negligent homicide charges, but refused to do so on the reckless manslaughter and "negligent conduct" criminally negligent homicide charges. *Id.* The jury found the respondent guilty of reckless manslaughter, and an appeal was filed. *Id.*

The court of appeals reversed, holding that the trial court's refusal to submit self-defense instructions on all four charges was error. *People v. Fink*, 37 Colo.App. 512, 514, 552 P.2d 529, 530 (1976). We granted certiorari to review the court of appeals decision, concluded that the trial court acted properly, and reversed the court of appeals. *People v. Fink*, 194 Colo. at 519, 574 P.2d at 83. We stated that under the "negligent conduct" portion of the criminally negligent homicide statute, the *mens rea* required for a conviction was that the defendant failed to perceive an unjustified risk that a reasonable person would have perceived in the same situation. *Id.* at 518, 574 P.2d at 83. We held that self-defense was inconsistent with the crim-

inally negligent homicide statute because the person asserting self-defense not only had to reasonably believe that his acts were justified, but also had to act in a reasonable manner. *Id.* By finding a person guilty of criminally negligent homicide because of "negligent conduct," we reasoned that the jury specifically found that the person did not act in a reasonable manner, i.e., he failed to perceive an unjustified risk, and thus impliedly rejected the self-defense theory. *Id.*

We applied the same rationale to the reckless manslaughter charge. We cited the Notes on the Use of CJI–Crim. 9:7 (1974), which stated: "The affirmative defense clause is deleted based upon the reasoning that if justification or exemption were present, the defendant would not be acting recklessly, therefore, if the jury is able to find that the defendant acted recklessly, [it had] already precluded any finding of affirmative defense." *Id.* We noted, however, that this did not mean that a defendant was barred from presenting evidence of self-defense at trial. We stated that evidence of self-defense must be allowed, and that the jury should consider the evidence when determining whether the defendant was acting in a reckless or a criminally negligent manner. *Id.*

In sum, we held that when an element of the crime charged is recklessness or criminal negligence, and the trial court properly instructs the jury as to each element of the crime charged, no error results from the court's failure to give a self-defense instruction. Because the trial court allowed Fink to present evidence of self-defense during trial and the jury was properly instructed, we reversed the court of appeals. *Id.*

The facts of the case now before us are strikingly similar to those found in *Fink*. In the present case, Case was charged with reckless manslaughter. Conflicting testimony was presented at trial which raised the issue of self-defense. The trial court instructed the jury on reckless manslaughter and the lesser included offense of criminally negligent homicide. Based on these facts, we conclude that the trial court was

not required, under *Fink*, to submit Case's tendered self-defense instruction to the jury.

The underlying rationale of *Fink* remains valid today and was properly followed by the trial court and the court of appeals. By finding Case guilty of reckless manslaughter, the jury has found that she consciously disregarded a substantial and unjustifiable risk that Carter would be killed. *See* § 18–3–104(1)(a), 8 C.R.S. (1984); § 18–1–501(8), 8 C.R.S. (1984). The jury therefore rejected the contention that Case was acting in self-defense. *See* § 18–1–704, 8 C.R.S. (1978). Had the jury believed Case's testimony that she was acting in self-defense, it would not have found her to have acted recklessly.

It is undisputed that the trial court permitted Case to present evidence of self-defense and that the jury was properly instructed on the manslaughter and criminally negligent homicide charges. Ironically, it was Officer Weber's testimony, not Case's, that supported the theory of self-defense. Case testified that she somehow removed the knife and Carter then impaled himself on the knife. When asked by the prosecution whether she stabbed Carter in an attempt to protect herself, Case replied: "No. I just took the knife out.... He moved into the knife and that is when he got stabbed." This testimony, while potentially supporting the defense of accident, offers no support for self-defense. Officer Weber, however, testified Case told her that after being knocked down by Carter, she "automatically stabbed" him. This testimony could be construed as supporting Case's claim of self-defense. Regardless of the merits of the testimony, the trial court properly allowed Case to present the self-defense evidence to the jury.

The trial court instructed the jury on each element of the charges. The manslaughter instruction tendered to the jury read:

The elements of the crime of manslaughter are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. recklessly,

4. caused the death of another person.

After considering all the evidence, if you decide the prosecution has proven each of the elements beyond a reasonable doubt, you should find the defendant guilty of manslaughter.

After considering all the evidence, if you decide the prosecution has failed to prove each of the elements beyond a reasonable doubt, you should find the defendant not guilty· of manslaughter.

The criminally negligent homicide instruction stated:

The elements of the crime of criminally negligent homicide are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. caused the death of another person,

4. by conduct amount to criminal negligence.

. . . .

After considering all the evidence, if you decide that the prosecution has proven each the elements of the crime charged or of a lesser included offense, you should find the defendant guilty of the offense proven, and you should so state in your verdict.

After considering all the evidence, if you decide that the prosecution has failed to prove one or more elements of the crime charged or of a lesser included offense, you should find the defendant not guilty of the offense which has not been proved, and you should so state in your verdict.

By submitting these instructions to the jury, the trial court instructed the jury as to each element of reckless manslaughter and criminally negligent homicide. *See* CJI–Crim. 9:06 & 9:09 (1983).

### III.

Because the trial court allowed Case to present evidence of self-defense at trial and properly instructed the jury on each element of the crimes charged, the trial court was not required to submit Case's tendered self-defense instruction to the jury. *See People v. Fink*, 194 Colo. 516, 574 P.2d 81 (1978). Accordingly, we affirm the court of appeals.

LOHR, J., dissents, and QUINN, C.J. and MULLARKEY, J., join the dissent.

LOHR, Justice, dissenting:

I respectfully dissent from the majority opinion. In my view, the trial court's failure to instruct the jury regarding the defendant's theory of self-defense was reversible error. Although I would agree that the result reached by the majority follows from *People v. Fink*, 194 Colo. 516, 574 P.2d 81 (1978), I would take this opportunity to overrule *Fink* and hold that a defendant charged with reckless manslaughter or criminally negligent homicide is entitled to a jury instruction on self-defense as long as some evidence was adduced at trial that would support a jury's finding that the defendant acted in self-defense.

In *People v. Fink* we held that when a defendant is charged with a crime that has as an element either recklessness or criminal negligence, and the jury is instructed as to each and every element of the crime, a self-defense instruction need not be given. 194 Colo. at 518, 574 P.2d at 83. Thus, under *Fink*, the trial court need only instruct the jury as to the elements of the crime charged and may omit any specific reference to the theory of self-defense. The reasoning underlying *Fink* was that if the jury believes that a defendant accused of reckless manslaughter or criminally negligent homicide acted in self-defense, then it will be unable to find that the defendant acted with the requisite *mens rea* of recklessness or criminal negligence. *Id.* The holding of that case was based on the assumption that the jury will use any evidence of self-defense to determine if the defendant was acting in a reckless or criminally negligent manner.

The result reached in *Fink* was supported by the "Notes on Use" of CJI–Crim. 9:7 (1974), which at the time *Fink* was

decided stated that the affirmative defense clause was deleted purposefully from the instruction on reckless manslaughter. The note reasoned that if justification or exemption were present the defendant would not be acting recklessly, so a jury finding of reckless conduct would preclude any affirmative defense. Since *Fink* was decided, however, the Colorado Jury Instructions–Criminal have been revised to include as an element of the crime of reckless manslaughter the absence of any relevant affirmative defense. *See* CJI–Crim. 9:06 (1983). The "Notes on Use" no longer state that justification or exemption is precluded by a finding of recklessness. Therefore, it appears that the current reckless manslaughter instruction contemplates an instruction on self-defense. As so construed, I regard the current version of this standardized jury instruction to reflect a more reasonable understanding of jury thought-processes and to give appropriate recognition to a defendant's right to have the jury instructed as to all matters of law applicable to his case.

It is no substitute for an instruction from the court regarding the legal requirements of the theory of self-defense that counsel can argue that the defendant was justified in using deadly force to defend himself. *See People v. Hardin*, 199 Colo. 229, 234, 607 P.2d 1291, 1294 (Colo.1980) ("It is the duty of the trial court to instruct the jury properly on all matters of law."). A defendant is entitled to an instruction on his theory of the case whenever the theory is supported by some evidence in the record. *People v. Marquez*, 692 P.2d 1089, 1098 (Colo.1984); *People v. Dillon*, 655 P.2d 841, 845 (Colo.1982). This is true no matter how unreasonable or improbable his theory might be. *People v. Marquez*, 692 P.2d at 1098. To expect a jury to understand without guidance from the trial court that it should consider evidence of self-defense when determining whether the defendant was acting recklessly or negligently is to ignore the practical limitations of the jury and to expect from it an awareness of a legal point "so subtle [that it] is a feat beyond the compass of ordinary minds." *People v. Madson*, 638 P.2d 18, 31 (Colo. 1981) (quoting *Shepard v. United States*, 290 U.S. 96, 104, 54 S.Ct. 22, 25, 78 L.Ed. 196 (1933)). Moreover, in this case the jury was instructed that it was to be guided by the judge's instructions taken as a whole, not by the lawyers' comments on the rules of law applicable to the case. The court, however, never instructed the jury as to the circumstances in which a person may act in self-defense. Consequently, it would have been difficult in light of these instructions for defense counsel to persuade the jury that the defendant's use of justifiable force to defend herself refuted the element of recklessness.

For these reasons, I would conclude that *Fink* was wrongly decided and would hold that a self-defense instruction should be given in a reckless manslaughter case if such an instruction is supported by evidence in the record. Under the circumstances of this case, a properly instructed jury could have chosen to believe the police officer's testimony that at the crime scene the defendant stated that she "automatically" stabbed the defendant. The jury could have treated this statement as evidence of self-defense and concluded that the defendant's trial testimony that the stabbing was accidental was based on faulty recollection. Under these circumstances, the failure to charge the jury on self-defense was not harmless and must be regarded as reversible error. Accordingly, I would reverse the judgment of the court of appeals and remand the case to that court with instructions to return it to the district court for a new trial.

QUINN, C.J., and MULLARKEY, J., join in this dissent.