Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
October 15, 2018

**2018 CO 83**

**No. 15SC754, People v. DeGreat—Self-defense—Aggravated Robbery—Jury
Instructions—Affirmative Defenses.**

This case requires the supreme court to decide whether a division of the court of
appeals erred in concluding that the statutory right to self-defense can apply to justify a
defendant's robbery of taxi cab services.  On the unique facts presented, the court
concludes that the division correctly determined that the defendant was entitled to a
self-defense instruction as to the aggravated robbery charge, although the court's
reasoning differs from that on which the division relied.  The court concludes that the
defendant presented some credible evidence to allow a reasonable jury to conclude that
the robbery of services that he allegedly committed was committed in self-defense.

Accordingly, the court affirms the division's judgment, albeit based on different
reasoning.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 83

**Supreme Court Case No. 15SC754**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 10CA2481

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Edward Kevin DeGreat.

**Judgment Affirmed**
*en banc*
October 15, 2018

**Attorneys for Petitioner:**
Cynthia H. Coffman, Attorney General
John T. Lee, Senior Assistant Attorney General
Kevin E. McReynolds, Assistant Attorney General
     *Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Jason C. Middleton, Deputy Public Defender
     *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**CHIEF JUSTICE COATS** dissents, and **JUSTICE BOATRIGHT** and **JUSTICE SAMOUR** join in the dissent.

¶1 This case requires us to decide whether a division of the court of appeals erred in concluding that the statutory right to self-defense can apply to justify a defendant's robbery of taxi cab services.[1] Prosecutors charged respondent Edward Kevin DeGreat with attempted second degree murder, first degree assault, and aggravated robbery arising out of an incident in which DeGreat did not pay his taxi fare after an altercation with a taxi driver. According to DeGreat, he initially intended to pay the fare but then realized that he was a few dollars short and offered to go into his apartment to retrieve the rest of the money. DeGreat claims that the driver then attacked him, the two began fighting, and when DeGreat believed he saw the driver brandish a weapon, he stabbed the driver in self-defense. Thereafter, the driver fled and DeGreat left the scene.

¶2 On these unique facts, we conclude that the division correctly determined that DeGreat was entitled to a self-defense instruction as to the aggravated robbery charge, although our reasoning differs from that on which the division relied. In our view, DeGreat presented some credible evidence to allow a reasonable jury to conclude that the robbery of services that DeGreat allegedly committed was committed in self-defense.

¶3 Accordingly, we affirm the division's judgment, albeit based on different reasoning.

---

[1] Specifically, we granted certiorari to review the following issue:

> Whether the court of appeals erred in concluding that the statutory right to use self-defense can apply to justify the taking of services in a robbery.

2

## I. Facts and Procedural History

¶4      One evening, DeGreat and two neighbors shared a taxi ride home.  When they arrived, the neighbors exited the cab, leaving DeGreat to pay the fare, as the passengers had agreed he would do.

¶5      The parties disagree about what happened next.  According to DeGreat, when he attempted to pay the fare, he realized that he was four dollars short, and he told the driver that he would go get the remaining amount from his apartment.  The driver asked DeGreat for his identification, DeGreat provided it to the driver, and the driver put it in his pocket.  The driver then made a telephone call and locked DeGreat in the taxi.  DeGreat asked the driver why he had locked the doors, and the driver responded that he had called the police.  DeGreat, who had been sitting in the front passenger seat, then jumped into the backseat to try to get out of the locked taxi, after which the driver got out, unlocked the doors, and allowed DeGreat to get out.  DeGreat reiterated that he would go get the money, but the driver responded that he should not leave because the police were on their way.  DeGreat again said that he was going to get the money, and he turned around to go to his apartment.

¶6      According to DeGreat, the driver then grabbed him by the back of his shirt, and the two men began fighting.  In the course of this altercation, DeGreat felt a burning sensation on his chin, saw blood on his shirt, and asked the driver if the driver had stabbed him.  According to DeGreat, the driver then put his hand behind his leg, and DeGreat "saw something gleam in the [driver's] hand."  The driver walked toward DeGreat and said, "I told you, you not going nowhere.  I'm tired of this, people running

3

off with my money . . . . I want all of my money." At that point, DeGreat decided that he needed to protect himself. So, he took a knife from his pocket and started swinging at the driver. DeGreat felt the knife hit the driver, after which the driver fled and DeGreat walked away toward his apartment.

¶7 The driver recalled the events differently. He claimed that after DeGreat had handed over his identification, he refused to get out of the car and became agitated. DeGreat then suddenly jumped into the backseat. The driver did not know what was going on, but he "knew it was not good in any case," and so he got out of the taxi. According to the driver, DeGreat then became more agitated, an altercation ensued, and DeGreat ultimately stabbed him, causing him to flee.

¶8 The People subsequently charged DeGreat with attempted second degree murder, first degree assault, aggravated robbery, and two crime of violence counts, and the case proceeded to trial. At trial, DeGreat admitted that he stabbed the driver and that he did not pay the driver for the taxi services. He asserted, however, that in doing so, he acted in self-defense.

¶9 At the close of the evidence, the trial court instructed the jury, as pertinent here, that self-defense is an affirmative defense to the attempted second degree murder and first degree assault charges, as well as to a number of lesser included offenses on which the jury was instructed. The court denied DeGreat's request for a self-defense instruction on the aggravated robbery charge, however, relying on *People v. Beebe*, 557 P.2d 840, 841 (Colo. App. 1976), in which the division had concluded that "self-defense is not an

4

affirmative defense to the crime of aggravated robbery," and *People v. Laurson*, 15 P.3d 791, 794 (Colo. App. 2000), which cited *Beebe* for the same proposition.

¶10    The jury ultimately convicted DeGreat of aggravated robbery, second degree assault—reckless, and two of the crime of violence counts. The jury acquitted DeGreat of the remaining counts.

¶11    DeGreat appealed, arguing, as pertinent here, that the trial court had erroneously refused to instruct the jury on self-defense in relation to the aggravated robbery charge. DeGreat contended that the trial court improperly relied on *Beebe* because, after that decision, Colorado courts, including this court, had made clear that self-defense is an affirmative defense to specific and general intent offenses. In particular, DeGreat relied on this court's decision in *People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011), in which we stated, "With respect to crimes requiring intent, knowledge, or willfulness, such as second-degree murder, self-defense is an affirmative defense." DeGreat asserted that because aggravated robbery is a general intent crime and he had offered evidence that he acted in self-defense, the trial court erred in refusing to instruct the jury on self-defense as an affirmative defense to robbery.

¶12    In a unanimous, published decision, a division of the court of appeals reversed DeGreat's aggravated robbery and related crime of violence convictions, remanded for a new trial on those counts, and otherwise affirmed the trial court's judgment. *People v. DeGreat*, 2015 COA 101, ¶ 57, ___ P.3d ___. As pertinent here, relying on *Pickering*, the division concluded that self-defense could apply to any general intent crime, irrespective of the type of crime at issue. *Id.* at ¶¶ 11–13, ___ P.3d at ___. The division thus concluded

5

that because DeGreat presented evidence that his failure to pay was "entangled with his belief" that the use of physical force was necessary to defend himself from the driver's use of force, DeGreat was entitled to a self-defense instruction as to the aggravated robbery charge. *Id.* at ¶ 15, ___ P.3d at ___. In so ruling, the division acknowledged the prior division's ruling in *Beebe* but observed that *Beebe* did not analyze the self-defense statute and was irreconcilable with *Pickering*. *Id.* at ¶ 16, ___ P.3d ___.

¶13 The People petitioned this court for certiorari review, and we granted that petition.

## II. Analysis

¶14 We begin by setting forth the applicable standard of review. We then discuss the statutes and case law related to robbery and self-defense. Finally, we apply this law to the facts before us.

### A. Standard of Review

¶15 "Trial courts have a duty to instruct the jury on all matters of law applicable to the case." *Roberts v. People*, 2017 CO 76, ¶ 18, 399 P.3d 702, 704–05. We review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law. *Id.* at ¶ 18, 399 P.3d at 705. We consider all of the instructions given by the trial court together to determine whether they properly advised the jury. *Id.*

¶16 To present an affirmative defense for jury consideration, a defendant must present some credible evidence to support the claimed defense. *People v. Garcia*, 113 P.3d 775, 783–84 (Colo. 2005). Whether the defendant has met this burden presents a question of law, and we therefore review the sufficiency of the defendant's evidence de novo. *Id.* at 784.

6

## B. Robbery and Self-Defense

¶17    Section 18-4-301(1), C.R.S. (2018), provides that a person commits the crime of robbery when he or she "knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation." A "thing of value," in turn, is expressly defined to include services. *See* § 18-1-901(3)(r), C.R.S. (2018).

¶18    A person commits aggravated robbery if, as pertinent here, during the act of robbery or immediate flight therefrom, the person "knowingly wounds or strikes the person robbed or any other person with a deadly weapon." *See* § 18-4-302(1)(b), C.R.S. (2018).

¶19    When a defendant properly presents an affirmative defense, the People must establish the guilt of the defendant beyond a reasonable doubt as to that issue and also as to the elements of the offense. § 18-1-407(2), C.R.S. (2018). Accordingly, when a defendant properly raises an affirmative defense, the nonapplicability of the defense effectively becomes an element of the offense that the People must prove beyond a reasonable doubt. *See Pickering*, 276 P.3d at 555.

¶20    Section 18-1-704(1), C.R.S. (2018), sets forth the pertinent elements of the affirmative defense of self-defense. That section provides, subject to exceptions not applicable to the question before us:

> [A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

*Id.*

7

¶21    When asserting an affirmative defense, the defendant seeks to justify, excuse, or mitigate the commission of the charged act. *See Pickering*, 276 P.3d at 555.

¶22    As noted above, in order to have the jury instructed on self-defense as an affirmative defense, a defendant must present some credible evidence to support that defense. *Garcia*, 113 P.3d at 783–84. The defendant's burden in this regard is relatively lenient. Thus, a defendant may satisfy this burden even if the only supporting evidence is "highly improbable" testimony from the defendant himself or herself. *Lybarger v. People*, 807 P.2d 570, 579 (Colo. 1991) (quoting *People v. Fuller*, 781 P.2d 647, 651 (Colo. 1989)).

## C. Application

¶23    Here, on the unique facts presented, we conclude that DeGreat has presented some credible evidence to support his request for an instruction on the affirmative defense of self-defense in relation to the aggravated robbery count.

¶24    As an initial matter, we note that in concluding that DeGreat was entitled to a self-defense instruction as to the aggravated robbery charge, the division relied on our statement in *Pickering*, 276 P.3d at 555, that "[w]ith respect to crimes requiring intent, knowledge, or willfulness, such as second-degree murder, self-defense is an affirmative defense." *DeGreat*, ¶ 13, ___ P.3d at ___. After the division issued its opinion in this case, however, we announced our opinion in *Roberts*. In *Roberts*, ¶ 27, 399 P.3d at 706, we clarified that *Pickering* did not establish a broad rule requiring trial courts to instruct the jury that self-defense is an affirmative defense to all crimes requiring a showing of intent, knowledge, or willfulness. We reasoned that the question before us in *Pickering* was

8

whether the trial court had erred in instructing the jury that the prosecution did not bear the burden of disproving beyond a reasonable doubt the defendant's claim of self-defense to a charge of reckless manslaughter. *Id.* We concluded that the trial court's instruction was proper and did not impermissibly shift the People's burden of proof to the defendant. *Id.* Thus, in *Roberts*, we observed that *Pickering* did not require us to consider—and we did not consider—the range of cases in which self-defense *is* an affirmative defense, although we recognized certain types of cases in which it could be, such as second degree murder. *Id.*

¶25 For these reasons, although we understand and do not fault the division for relying on the above-quoted sentence from *Pickering*, we conclude that the division erred in relying substantially on that sentence to conclude that DeGreat was entitled to a self-defense instruction as to the aggravated robbery charge at issue here.

¶26 The question nonetheless remains whether, on the facts presented, DeGreat has satisfied his burden of introducing some credible evidence to support an instruction on self-defense as an affirmative defense to aggravated robbery.

¶27 In addressing this question, we acknowledge that the concept of committing robbery in self-defense may seem counterintuitive. Nonetheless, although this court does not appear to have considered the issue, other courts have opined that under certain circumstances, robbery may indeed be committed in self-defense. By way of example, a number of courts have concluded that acts of robbery are justified by self-defense when the defendant uses force to disarm an assailant and then flees with the assailant's weapon. *See, e.g., State v. Campbell*, 214 N.W.2d 195, 197 (Iowa 1974) (noting that the defendant was

9

justified in taking an assailant's gun from him and that no crime had occurred, as long as the defendant had used no more force than was necessary to disarm the assailant); *State v. Antwine*, 607 P.2d 519, 528–29 (Kan. Ct. App. 1980) ("The taking and retention of a gun until it is safe to return it, however, is permissible where self-defense is justified."). Indeed, the parties before us appear to agree that such a scenario would support an instruction on self-defense as a defense to an aggravated robbery charge.

¶28 We also note that Colorado's statutory scheme for robbery might make scenarios like this more common than in some other states. In Colorado, unlike in many other jurisdictions, a robbery (1) arguably can be committed by omission, rather than commission (e.g., a failure to pay the victim);[2] (2) may involve a taking of services, rather than just property; and (3) can be committed upon a showing of knowing, as opposed to intentional, conduct. *See* §§ 18-1-901(3)(r), 18-4-301(1) (making clear that a knowing taking of services through the use of force can constitute robbery); *see also People v. Moseley*, 566 P.2d 331, 335 (Colo. 1977) ("We therefore hold that robbery under section 18-4-301 requires no specific intent to permanently deprive the owner of the use or benefit of his property.").

---

[2] Although DeGreat noted, in passing, that a legitimate question exists as to whether inaction in failing to pay for services constitutes a "taking" for purposes of Colorado's robbery statute, he did not cross-petition for certiorari on that issue, and thus, the issue is not properly before us. Accordingly, for purposes of this case, we assume without deciding that the withholding of payment for taxi services can constitute a taking for purposes of the robbery statute.

10

¶29 Thus, unlike in some other states, in Colorado, a knowing omission amounting to the taking of services arguably can support a robbery charge, if the other elements of that crime are also satisfied. *Compare* §§ 18-1-901(3)(r), 18-4-301(1), *and Moseley*, 566 P.2d at 335, *with* Cal. Penal Code § 211 (West 2017) ("Robbery is the felonious taking of *personal property* in the possession of another . . . .") (emphasis added), *State v. Bartlett*, 346 P.3d 1240, 1242 (Or. Ct. App. 2015) (concluding that the failure to pay taxi cab fare could not form the basis of a robbery charge because taxi services are not property and the offense requires the taking of property), *and* Tex. Penal Code Ann. §§ 29.02, 31.01, 31.04 (West 2017) (limiting robbery to the theft of "property," which is defined separately from "services").

¶30 Accordingly, in Colorado, a robbery may be found to have been committed when, for example, a taxi cab passenger is physically attacked by the driver, uses physical force to defend himself or herself, and immediately flees without paying. In such a scenario, the passenger arguably would have taken the taxi services through the use of force. But the simultaneous taking and use of force in that scenario might also have been justified as a single act of self-defense.

¶31 Although we need not—and do not—express any opinion on the merits of DeGreat's defense, we conclude that he has presented at least some credible evidence to allow a reasonable jury to conclude that this case is like the just-described hypothetical. Specifically, DeGreat testified that (1) he used force to defend himself after the taxi driver had attacked him; (2) the driver fled as a result of DeGreat's justified use of force in

11

self-defense; and (3) at the moment the driver fled, albeit due to DeGreat's justifiable use of force, DeGreat knowingly took taxi services without paying for them.

¶32    Stated otherwise, on the unique facts of this case, a reasonable jury could conclude that DeGreat committed robbery (knowingly taking taxi services through the use of force) but that this crime was justified because his knowing taking (failure to pay) and simultaneous use of force (which caused the driver to flee, thereby ending the driver's alleged assault) were done in self-defense.

¶33    For these reasons, although based on different reasoning, we conclude that the division correctly ruled that the trial court erred in refusing DeGreat's proffered instruction on self-defense as an affirmative defense to the aggravated robbery charge.[3]

¶34    In addition, we cannot say that the trial court's error was harmless. "If the trial court errs in disallowing an affirmative defense, then it improperly lowers the prosecution's burden of proof." *Garcia*, 113 P.3d at 784. Moreover, we note that DeGreat was acquitted of each charge on which the jury was given the opportunity to consider his affirmative defense of self-defense, namely, attempted second degree murder, first degree assault, and several lesser included assault offenses. Accordingly, the jury may well have credited this defense when it had the opportunity to do so. The jury also

---

[3] To the extent that the court of appeals divisions' rulings in *Beebe* and *Laurson* can be read to suggest that self-defense can *never* be an affirmative defense to a charge of aggravated robbery, we disapprove of those rulings.

12

acquitted DeGreat of the lesser nonincluded offense of theft, which also suggests that the jury may have credited DeGreat's version of events.

¶35     We therefore agree that DeGreat is entitled to a new trial on his aggravated robbery conviction and the related crime of violence charge.

¶36     In so concluding, we emphasize the narrow nature of our decision today. We conclude only that on the unique facts presented, DeGreat has introduced some credible evidence to allow a reasonable jury to find that he committed the alleged aggravated robbery in self-defense. We acknowledge that the People's evidence presents a very different version of what occurred and that were a jury to find this evidence more credible than DeGreat's testimony, the evidence would not support a claim of self-defense. Likewise, the conflicting evidence presented by the parties raises legitimate questions as to when the alleged robbery occurred, and the determination of these questions might well affect DeGreat's claim of self-defense. For example, depending on which version of the evidence one believes, DeGreat's use of force may have occurred either before or after the alleged robbery, thus undermining his claim that the robbery was committed in self-defense.

¶37     We express no view on any of these issues. Rather, these are fact questions that properly rest with the jury.

## III.  Conclusion

¶38     For these reasons, we conclude that on the unique facts of this case, the division correctly concluded that the trial court erred in refusing DeGreat's requested instruction on self-defense as an affirmative defense to the aggravated robbery charge. Accordingly,

13

we affirm the division's judgment and remand this case with instructions that the division return this matter to the trial court for further proceedings consistent with this opinion.

**CHIEF JUSTICE COATS** dissents, and **JUSTICE BOATRIGHT** and **JUSTICE SAMOUR** join in the dissent.

CHIEF JUSTICE COATS, dissenting.

¶39    While I applaud the majority for identifying the intermediate appellate court's mistake in finding that our statutory defense of person could excuse or justify any intentional or knowing conduct that would otherwise be a crime, I fear that by finding the defendant entitled to a self-defense instruction in this case and by finding, in light of its other verdicts, that the jury may well have credited such a defense, the majority itself fails to fully appreciate the basis for our holding in *People v. Pickering*, 276 P.3d 553 (Colo. 2011), as well as our long line of holdings distinguishing a defense of denial, or traverse, from one of excuse or justification.   Complicating any articulation of the principles governing the requested instruction in this case is the majority's reluctance to commit with regard to the elements of the crime of robbery in the first instance, instead adopting the formula that the crime is "arguably" committed by certain acts.  Quite apart from the theory of prosecution or procedural defaults of the defense in this particular case, I believe the question of an appropriate defense instruction upon which we have granted certiorari is inseparable from the nature of the crime for which the defense is claimed and a determination whether the trial court reversibly erred in declining to charge the prosecution with disproving self-defense, over and above proving that the defendant committed the elements of robbery.  I therefore briefly offer my own understanding of the applicable law and explain my reasons for understanding that both the court of appeals and the majority analyses have slipped into error.

¶40    Although for different reasons, like the court of appeals the majority concludes that the defendant was entitled to have the jury instructed that it was the burden of the

1

prosecution to disprove that he reasonably, in self-defense, took a thing of value from the victim by force, in addition to merely proving that he knowingly took a thing of value from the victim by force. In *Pickering*, we addressed the question whether the trial court impermissibly shifted the burden of proof to the defendant by instructing that the prosecution did not bear an additional burden to disprove the affirmative defense of person with regard to crimes of negligence or recklessness. 276 P.3d at 557; *see also Montoya v. People*, 2017 CO 40, ¶¶ 27–29, 394 P.3d 676, 687–88 (explaining in greater detail our rationale in *Pickering*). In finding that it did not, we relied generally on our long-accepted distinction between defenses that merely deny an element of the charged offense and those that effectively admit the elements of the offense but assert a legal justification for committing them. *Pickering*, 276 P.3d at 555; *see, e.g., People v. Huckleberry*, 768 P.2d 1235, 1238 (Colo. 1989). In addition, we relied in particular on our similarly long-established case law with regard to the affirmative defense of person, or self-defense, holding that because crimes of negligence or recklessness by definition involve acts that are not reasonable, a determination that the defendant acted reasonably to defend himself necessarily negatives an element of the offense, or "traverses" that element, and therefore denies commission of the offense rather than asserting justification for committing it. *See, e.g., Case v. People*, 774 P.2d 866, 870 (Colo. 1989); *People v. Fink*, 574 P.2d 81, 83 (Colo. 1978).

¶41    Because acting reasonably in self-defense nevertheless clearly provides a defense to crimes of negligence or recklessness, just not an *affirmative* defense as to which the prosecution bears a burden over and above proving beyond a reasonable doubt the

2

elements of the offense itself, the legislature, as we noted in *Pickering*, enacted a provision specifically allowing a defendant to present evidence of self-defense, *when relevant*, and requiring an instruction on the law of self-defense, *but not an affirmative defense instruction*, permitting the jury to consider evidence of self-defense in determining whether the defendant acted recklessly, with extreme indifference, or in a criminally negligent manner. § 18-1-704(4), C.R.S. (2018). Neither we, in *Pickering*, nor the legislature, however, remotely suggested that an affirmative defense-of-person instruction was available whenever an intentional or knowing crime is at issue, regardless of the nature of that crime, and the majority perhaps too generously suggests that such an inference could reasonably have been drawn from our language in *Pickering* prior to subsequent clarification.

¶42 The majority finds credible evidence that the defendant robbed the victim in self-defense by positing that the crime of robbery includes taking a "service" by force from the person or presence of another; that refusing to pay that person for the service voluntarily performed "arguably" amounts to taking that service from his person or presence; and that fleeing the scene without paying the victim after stabbing him in self-defense amounts to robbing him of a service in self-defense. Maj. op. ¶¶ 30–31. Apart from the torture required of the English language to even derive this syllogism from the applicable statutory definitions, I find it simply beyond comprehension that using force against another could be understood as simultaneously being for the purpose of taking a thing of value (other than perhaps a weapon) from his person or presence and for the purpose of defending himself. If the defendant reasonably used force to defend himself

3

then, of necessity, the reason he used that force was *not* to avoid paying for the service rendered. While proof of the reasonable use of force to defend oneself might therefore simultaneously prove that the same force was not used to take a service from the victim, it could not entitle the defendant to an affirmative defense instruction, which would impose upon the prosecution a burden to prove something in addition to the elements of robbery.

¶43 In any event, the majority's conclusion that any error in this regard was not harmless because the jury may have credited the affirmative defense had it been properly instructed fails to account for the jury's findings, based on the instructions it actually was given. The jury was clearly instructed as to the affirmative defense of person for stabbing the victim, with regard to the charges of attempted murder and assault, and it nevertheless returned a verdict of guilt as to reckless assault. As we reasoned in *Fink*, *Case*, *Pickering*, and *Montoya*, among others, by finding that the defendant stabbed the victim recklessly, the jury necessarily rejected the proposition that he stabbed the victim reasonably, in self-defense. No act other than stabbing the victim was at issue as the basis for the defendant's conviction of aggravated robbery. By rejecting the assertion that the defendant reasonably stabbed the victim, in self-defense, the jury necessarily rejected the proposition that the defendant took a thing of value from the victim by reasonably stabbing him in self-defense.

¶44 Rather than simply blurring the distinction between the prosecution's burden relative to a defense of traverse and an affirmative defense, however, I consider the majority's opinion today to be most problematic for what it implies about the crime of

4

robbery. Unlike the majority, I do not believe the defendant's failure to cross-appeal precludes us from correctly defining a crime, where that definition is integral to resolution of the question presented by the People. In this regard, the majority articulates the elements of robbery as including a taking of services and, at least "arguably," a taking by omission, in the form of a failure to pay a person who voluntarily provided those services. Maj. op. ¶ 29. But for these findings, or presumptions, the question whether the defendant was entitled to an instruction concerning legal justification for robbing the victim would evaporate.

¶45 First, the majority declares, without reasoning and by reference to no more than the statutory definitions of the crime of "Robbery" and the term "Thing of value," that a knowing taking of services through the use of force can constitute robbery in this jurisdiction. Maj. op. ¶ 28. Not only do I *not* find this proposition self-evident from the applicable statutory definitions, but in fact, I find it quite impossible. The statute defines robbery as "knowingly tak[ing] anything of value from the person or presence of another by the use of force, threats, or intimidation." § 18-4-301(1), C.R.S. (2018). The statute relied on by the majority for finding a service to constitute "anything of value" defines "Thing of value" to include "real property, tangible and intangible personal property, contract rights, choses in action, services, confidential information, medical records information, and any rights of use or enjoyment connected therewith." § 18-1-901(3)(r), C.R.S. (2018). That definition is, however, not limited to the crime of robbery but rather appears as a general definition, governing all of the crimes and defenses in the criminal code. § 18-1-901(1). While it may be reasonable to presume that the phrase "anything of

5

value" contained in the definition of robbery refers to things of value as generally defined, it is equally clear that many, if not most, of the things included in the general definition could not possibly be the subject of robbery because they could not possibly be taken from the person or presence of another by the use of force, threats, or intimidation. It would be absurd, for example, to suggest that "contract rights" or "choses in action" could be so taken. So too it would be highly unusual to suggest that a "service" can be taken from the person or presence of another, not only because, as the majority concedes, such a thing has never been included in the definition of robbery at law, or for that matter in virtually any other jurisdiction, but also because such a construction requires impermissible liberties to be taken with the English language.

¶46    While understanding a "service" to have been taken by force, threats, or intimidation from the person or presence of another stretches the meaning of those terms well beyond normal usage, if such a thing could possibly have been legislatively intended, surely it could include no more at its outer extremity than threatening or physically forcing another to provide or perform the service. In addition to its other shortcomings already identified, the majority's theory of error requires a construction of the statutory language that would permit the requirement of taking a thing of value, in this case a service, from the person or presence of another to include the subsequent refusal to pay for a service voluntarily rendered; and furthermore to include within the meaning of taking a service by force, the defendant's flight from the scene without paying, after assaulting the provider in self-defense. I for one not only find such an interpretation of the statutory language far from self-evident, as the majority appears to

accept, but in the absence of some statutory history or other aid to construction indicating as much, I find it highly unconvincing.

¶47 Ironically, in fashioning this solution for the benefit of the defendant in this particular case, I fear the majority greatly expands the crime of robbery well beyond anything legislatively intended; and with its suggestion that a taking occurs by refusing to pay for a thing of value voluntarily handed over, this may be true of theft as well. When the statutory definition of robbery is properly construed, there may well have been insufficient evidence to reach the jury in the first place. Whether that was in fact the case and whether the defendant would have been permitted to assert such an error before this court would clearly raise additional questions not addressed by the majority.

¶48 I therefore respectfully dissent.

I am authorized to state that JUSTICE BOATRIGHT and JUSTICE SAMOUR join in this dissent.