CHIEF JUSTICE COATS, dissenting.
¶ 39 While I applaud the majority for identifying the intermediate appellate court's mistake in finding that our statutory defense of person could excuse or justify any intentional or knowing conduct that would otherwise be a crime, I fear that by finding the defendant entitled to a self-defense instruction in this case and by finding, in light of its other verdicts, that the jury may well have credited such a defense, the majority itself fails to fully appreciate the basis for our holding in People v. Pickering , 276 P.3d 553 (Colo. 2011), as well as our long line of holdings distinguishing a defense of denial, or traverse, from one of excuse or justification. Complicating any articulation of the principles governing the requested instruction in this case is the majority's reluctance to commit with regard to the elements of the crime of robbery in the first instance, instead adopting the formula that the crime is "arguably" committed by certain acts. Quite apart from the theory of prosecution or procedural defaults of the defense in this particular case, I believe the question of an appropriate defense instruction upon which we have granted certiorari is inseparable from the nature of the crime for which the defense is claimed and a determination whether the trial court reversibly erred in declining to charge the prosecution with disproving self-defense, over and above proving that the defendant committed the elements of robbery. I therefore briefly offer my own understanding of the applicable law and explain my reasons for understanding that both the court of appeals and the majority analyses have slipped into error.
¶ 40 Although for different reasons, like the court of appeals the majority concludes that the defendant was entitled to have the *548 jury instructed that it was the burden of the prosecution to disprove that he reasonably, in self-defense, took a thing of value from the victim by force, in addition to merely proving that he knowingly took a thing of value from the victim by force. In Pickering , we addressed the question whether the trial court impermissibly shifted the burden of proof to the defendant by instructing that the prosecution did not bear an additional burden to disprove the affirmative defense of person with regard to crimes of negligence or recklessness. 276 P.3d at 557 ; see also Montoya v. People , 2017 CO 40, ¶¶ 27-29, 394 P.3d 676, 687-88 (explaining in greater detail our rationale in Pickering ). In finding that it did not, we relied generally on our long-accepted distinction between defenses that merely deny an element of the charged offense and those that effectively admit the elements of the offense but assert a legal justification for committing them. Pickering , 276 P.3d at 555 ; see, e.g. , People v. Huckleberry , 768 P.2d 1235, 1238 (Colo. 1989). In addition, we relied in particular on our similarly long-established case law with regard to the affirmative defense of person, or self-defense, holding that because crimes of negligence or recklessness by definition involve acts that are not reasonable, a determination that the defendant acted reasonably to defend himself necessarily negatives an element of the offense, or "traverses" that element, and therefore denies commission of the offense rather than asserting justification for committing it. See, e.g. , Case v. People , 774 P.2d 866, 870 (Colo. 1989) ; People v. Fink , 194 Colo. 516, 574 P.2d 81, 83 (1978).
¶ 41 Because acting reasonably in self-defense nevertheless clearly provides a defense to crimes of negligence or recklessness, just not an affirmative defense as to which the prosecution bears a burden over and above proving beyond a reasonable doubt the elements of the offense itself, the legislature, as we noted in Pickering , enacted a provision specifically allowing a defendant to present evidence of self-defense, when relevant , and requiring an instruction on the law of self-defense, but not an affirmative defense instruction , permitting the jury to consider evidence of self-defense in determining whether the defendant acted recklessly, with extreme indifference, or in a criminally negligent manner. § 18-1-704(4), C.R.S. (2018). Neither we, in Pickering , nor the legislature, however, remotely suggested that an affirmative defense-of-person instruction was available whenever an intentional or knowing crime is at issue, regardless of the nature of that crime, and the majority perhaps too generously suggests that such an inference could reasonably have been drawn from our language in Pickering prior to subsequent clarification.
¶ 42 The majority finds credible evidence that the defendant robbed the victim in self-defense by positing that the crime of robbery includes taking a "service" by force from the person or presence of another; that refusing to pay that person for the service voluntarily performed "arguably" amounts to taking that service from his person or presence; and that fleeing the scene without paying the victim after stabbing him in self-defense amounts to robbing him of a service in self-defense. Maj. op. ¶¶ 30-31. Apart from the torture required of the English language to even derive this syllogism from the applicable statutory definitions, I find it simply beyond comprehension that using force against another could be understood as simultaneously being for the purpose of taking a thing of value (other than perhaps a weapon) from his person or presence and for the purpose of defending himself. If the defendant reasonably used force to defend himself then, of necessity, the reason he used that force was not to avoid paying for the service rendered. While proof of the reasonable use of force to defend oneself might therefore simultaneously prove that the same force was not used to take a service from the victim, it could not entitle the defendant to an affirmative defense instruction, which would impose upon the prosecution a burden to prove something in addition to the elements of robbery.
¶ 43 In any event, the majority's conclusion that any error in this regard was not harmless because the jury may have credited the affirmative defense had it been properly instructed fails to account for the jury's findings, based on the instructions it actually was given. The jury was clearly instructed as to the affirmative defense of person for stabbing *549 the victim, with regard to the charges of attempted murder and assault, and it nevertheless returned a verdict of guilt as to reckless assault. As we reasoned in Fink , Case , Pickering , and Montoya , among others, by finding that the defendant stabbed the victim recklessly, the jury necessarily rejected the proposition that he stabbed the victim reasonably, in self-defense. No act other than stabbing the victim was at issue as the basis for the defendant's conviction of aggravated robbery. By rejecting the assertion that the defendant reasonably stabbed the victim, in self-defense, the jury necessarily rejected the proposition that the defendant took a thing of value from the victim by reasonably stabbing him in self-defense.
¶ 44 Rather than simply blurring the distinction between the prosecution's burden relative to a defense of traverse and an affirmative defense, however, I consider the majority's opinion today to be most problematic for what it implies about the crime of robbery. Unlike the majority, I do not believe the defendant's failure to cross-appeal precludes us from correctly defining a crime, where that definition is integral to resolution of the question presented by the People. In this regard, the majority articulates the elements of robbery as including a taking of services and, at least "arguably," a taking by omission, in the form of a failure to pay a person who voluntarily provided those services. Maj. op. ¶ 29. But for these findings, or presumptions, the question whether the defendant was entitled to an instruction concerning legal justification for robbing the victim would evaporate.
¶ 45 First, the majority declares, without reasoning and by reference to no more than the statutory definitions of the crime of "Robbery" and the term "Thing of value," that a knowing taking of services through the use of force can constitute robbery in this jurisdiction. Maj. op. ¶ 28. Not only do I not find this proposition self-evident from the applicable statutory definitions, but in fact, I find it quite impossible. The statute defines robbery as "knowingly tak[ing] anything of value from the person or presence of another by the use of force, threats, or intimidation." § 18-4-301(1), C.R.S. (2018). The statute relied on by the majority for finding a service to constitute "anything of value" defines "Thing of value" to include "real property, tangible and intangible personal property, contract rights, choses in action, services, confidential information, medical records information, and any rights of use or enjoyment connected therewith." § 18-1-901(3)(r), C.R.S. (2018). That definition is, however, not limited to the crime of robbery but rather appears as a general definition, governing all of the crimes and defenses in the criminal code. § 18-1-901(1). While it may be reasonable to presume that the phrase "anything of value" contained in the definition of robbery refers to things of value as generally defined, it is equally clear that many, if not most, of the things included in the general definition could not possibly be the subject of robbery because they could not possibly be taken from the person or presence of another by the use of force, threats, or intimidation. It would be absurd, for example, to suggest that "contract rights" or "choses in action" could be so taken. So too it would be highly unusual to suggest that a "service" can be taken from the person or presence of another, not only because, as the majority concedes, such a thing has never been included in the definition of robbery at law, or for that matter in virtually any other jurisdiction, but also because such a construction requires impermissible liberties to be taken with the English language.
¶ 46 While understanding a "service" to have been taken by force, threats, or intimidation from the person or presence of another stretches the meaning of those terms well beyond normal usage, if such a thing could possibly have been legislatively intended, surely it could include no more at its outer extremity than threatening or physically forcing another to provide or perform the service. In addition to its other shortcomings already identified, the majority's theory of error requires a construction of the statutory language that would permit the requirement of taking a thing of value, in this case a service, from the person or presence of another to include the subsequent refusal to pay for a service voluntarily rendered; and furthermore to include within the meaning of taking a service by force, the defendant's *550 flight from the scene without paying, after assaulting the provider in self-defense. I for one not only find such an interpretation of the statutory language far from self-evident, as the majority appears to accept, but in the absence of some statutory history or other aid to construction indicating as much, I find it highly unconvincing.
¶ 47 Ironically, in fashioning this solution for the benefit of the defendant in this particular case, I fear the majority greatly expands the crime of robbery well beyond anything legislatively intended; and with its suggestion that a taking occurs by refusing to pay for a thing of value voluntarily handed over, this may be true of theft as well. When the statutory definition of robbery is properly construed, there may well have been insufficient evidence to reach the jury in the first place. Whether that was in fact the case and whether the defendant would have been permitted to assert such an error before this court would clearly raise additional questions not addressed by the majority.
¶ 48 I therefore respectfully dissent.
I am authorized to state that JUSTICE BOATRIGHT and JUSTICE SAMOUR join in this dissent.